ATTORNEYS FOR APPELLANT
Deborah B. Markisohn
Ruth A. Johnson
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Andrew R. Falk
Andrew A. Kobe
Deputy Attorneys General
Indianapolis, Indiana

Gillian D. Keiffner
Marion County Deputy Prosecutor
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S02-1311-CR-734

BRUCE RYAN,                              *Appellant (Defendant)*,

v.

STATE OF INDIANA,                        *Appellee (Plaintiff)*.

Appeal from the Marion Superior Court, No. 49G02-1110-FC-77449
The Honorable Robert Altice, Judge

On Transfer from the Indiana Court of Appeals, No. 49A02-1211-CR-932

**June 3, 2014**

**Dickson, Chief Justice**.

Following a jury trial, Bruce Ryan was convicted on two of three counts of Class C felony Sexual Misconduct with a Minor.[1] Appealing his convictions, the defendant argues that several statements made by the State during closing argument—statements to which he raised no objection at trial—constitute prosecutorial misconduct and that the cumulative effect of such

---

[1] *See* Ind. Code § 35-42-4-9.

misconduct rises to the level of fundamental error, warranting reversal of his convictions. The Court of Appeals agreed and reversed his convictions. Ryan v. State, 992 N.E.2d 776, 791 (Ind. Ct. App. 2013). We granted transfer, thereby vacating the opinion of the Court of Appeals, and we now affirm the trial court, concluding that some of the prosecutor's conduct was improper, but because of the absence of any timely objection by the defendant, reversal is not warranted.

During the summer and fall of 2011, forty-three year old Bruce Ryan, an eighth-grade science teacher, engaged in a relationship with a fifteen year old freshman student ("FS") at the school where the defendant taught. FS had known the defendant since she was eleven years old, had a "crush" on the defendant for several years, and had recently completed the defendant's eighth-grade physics class. During the summer of 2011, FS attended a science club with the defendant at the school—often the only student in attendance. At some point, the defendant and FS began sending private messages to each other every night using Google Plus, a social networking site. Initially, the purpose of their chats was to discuss the science club, but the content became more personal and intimate. By the end of the summer, the defendant and FS were hugging and kissing open-mouthed with their tongues in a storeroom in the back of the defendant's classroom. During this time period, they both told each other that they loved and missed each other, and the defendant also gave FS presents. Late October 2001, FS's parents discovered her online communications with the defendant and notified the school principal and subsequently the police. The State charged the defendant with three counts of Class C felony Sexual Misconduct with a Minor, alleging misconduct on various dates.[2]

On appeal, the defendant challenges his convictions on grounds of prosecutorial misconduct, pointing to various remarks made by the deputy prosecutor during closing arguments. The defendant did not raise any objection to nor seek relief from the prosecutor's remarks during trial, but to avoid procedural default he contends these remarks constituted fundamental error. On transfer, the State argues that fundamental error did not occur.

In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we de-

---

[2] Additional facts will be supplied as needed and may be found in the opinion of the Court of Appeals. *See* Ryan v. State, 992 N.E.2d 776, 779–80 (Ind. Ct. App. 2013), *trans. granted*, 997 N.E.2d 357 (Ind. 2013).

termine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006), *quoted in* Castillo v. State, 974 N.E.2d 458, 468 (Ind. 2012). A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. Mahla v. State, 496 N.E.2d 568, 572 (Ind. 1986). "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by *the probable persuasive effect* of the misconduct *on the jury's decision* rather than the degree of impropriety of the conduct." Cooper, 854 N.E.2d at 835 (emphasis added) (citations omitted). To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Id.*; *see also* Maldonado v. State, 265 Ind. 492, 498, 355 N.E.2d 843, 848 (1976).

Our standard of review is different where a claim of prosecutorial misconduct has been procedurally defaulted for failure to properly raise the claim in the trial court, that is, *waived* for failure to *preserve* the claim of error. Booher v. State, 773 N.E.2d 814, 817–18 (Ind. 2002).[3] The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. *Id.* at 818. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." Benson v. State, 762 N.E.2d 748, 756 (Ind. 2002), *quoted in* Castillo, 974 N.E.2d at 468 and Cooper, 854 N.E.2d at 835. In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." *Id.* The element of such harm is not established by the fact of ultimate conviction but

---

[3] This opinion overruled our prior decisions to the extent those opinions suggested the standard of review is the same for properly-preserved and procedurally-defaulted claims of prosecutorial misconduct. *See, e.g.*, Boatright v. State, 759 N.E.2d 1038, 1043 (Ind. 2001) (citing authority that ultimate misinterprets Maldonado v. State, 265 Ind. 492, 498–99, 355 N.E.2d 843, 848 (1976) (addressing only the two instances of alleged misconduct to which the defendant contemporaneously objected)).

rather "depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled." Townsend v. State, 632 N.E.2d 727, 730 (Ind. 1994) (quoting Hart v. State, 578 N.E.2d 336, 338 (Ind. 1991)). In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such *an undeniable and substantial effect on the jury's decision* that a fair trial was impossible. *See* Boesch v. State, 778 N.E.2d 1276, 1279 (Ind. 2002); Townsend, 632 N.E.2d at 730; *see, e.g.*, Castillo, 974 N.E.2d at 469 n.11 (noting closing arguments are perceived as partisan advocacy).

We stress that "[a] finding of fundamental error essentially means that the trial judge erred . . . by not acting when he or she should have . . . ." Whiting v. State, 969 N.E.2d 24, 34 (Ind. 2012). Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error.[4] *See* Baer v. State, 942 N.E.2d 80, 99 (Ind. 2011) (noting it is "highly unlikely" to prevail on a claim of fundamental error relating to prosecutorial misconduct); Stevens v. State, 691 N.E.2d 412, 420 n.2 (Ind. 1997); Wilson v. State, 222 Ind. 63, 83, 51 N.E.2d 848, 856 (1943).

The defendant contends that the prosecutor improperly commented on his constitutional rights to a jury trial, improperly demeaned defense counsel, improperly commented on the truthfulness of the victim, and improperly urged the jury to convict him for reasons other than his guilt.

---

[4] Where the procedural posture of a claim is affected by counsel's failure to object at trial, an ineffective assistance of counsel claim may be more on point than a claim of fundamental error. "Although fundamental-error and ineffective-assistance-of-counsel claims are different, they often yield the same result." Whiting v. State, 969 N.E.2d 24, 34 (Ind. 2012) (citing McCorker v. State, 797 N.E.2d 257, 262–63 (Ind. 2003)).

4

First, the defendant argues that the prosecutor impermissibly penalized his constitutional right to a jury trial when she asserted, "I want to be really clear, we are here because everyone has a right to have a jury trial. We're not here because he didn't do it, we're here because he wants to get away with it. So don't let him, thank you." Appellant's Br. at 8 (quoting Tr. at 141) (emphasis deleted). The State argues that the prosecutor's statement was not misconduct because it invited the jury to make an inference of guilt from the evidence at trial.

We acknowledge that a prosecutor may not present argument that penalizes or impinges upon a defendant's exercise of the privilege against self-incrimination. Boatright v. State, 759 N.E.2d 1038, 1043 (Ind. 2001) ("The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is *subject to reasonable interpretation* by a jury as an invitation to draw an adverse inference from a defendant's silence.") (emphasis added) (quotation omitted); *see also* Crosson v. State, 274 Ind. 247, 249, 410 N.E.2d 1194, 1195 (1980) ("It is true that . . . *any direct or indirect reference* to the defendant's failure to testify has been strictly regarded as an impingement of his constitutional and statutory rights not to testify.") (emphasis added). We note, however, that a reasonable jury may often perceive a defendant's exercise of the privilege against self-incrimination as implying guilt, whereas if a jury is informed that a jury trial was upon the request of the defendant, such knowledge is substantially less likely to convey this implication.

The first sentence of the challenged passage, declaring that everyone has a right to have a jury trial, clearly is not problematic. The concern is whether the comments that followed, beginning with the same "we are here because" phrase, are subject to a reasonable interpretation that penalizes or impinges upon the defendant's exercise of his right to jury trial. We think not. The "right to a jury trial" sentence does not convey the idea that the trial in this case is anything other than an inherent part of every criminal proceeding. The sentence does not imply that it was at the defendant's request, or deny that it was at the State's request. We decline to find that the prosecutor's ensuing argument regarding the reason "we are here" negatively implicated the defendant's exercise of his right to jury trial.

Second, the defendant argues that the prosecutor improperly demeaned defense counsel

5

with the following comments on rebuttal:

> I guess it's frustrating in these cases because these kinds of [defense] arguments are how guilty people walk. And so, when you think about how people get away with it it's because defense attorneys do things like say well, it was a lousy investigation.
> . . .
> Then what they [the defense] do is they bring up cases of false accusations in the media, right? Whatever it is, the Penn State—or whichever other one—Duke; they bring up why? To make you worry that somehow you're going to convict him and then it will turn out that it was all bogus. That's [a] classic defense attorney trick.

Appellant's Br. at 10 (quoting Tr. at 151–52) (emphasis deleted). The State argues that the prosecutor's comments did not demean defense counsel's character but rather remarked on the "style and effect" of his line of argumentation, responded to defense counsel's closing argument, and reminded the jury to base their decision on the evidence. Appellee's Br. at 12. While "comments that demean opposing counsel, especially in front of a jury, are inappropriate," Marcum v. State, 725 N.E.2d 852, 859 (Ind. 2000), not all of the allegedly improper comments here are objectionable. "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." Cooper, 854 N.E.2d at 836. Here, the prosecutor used her rebuttal to respond to defense counsel's closing argument, in which he criticized the quality of the police investigation and then compared famous cases of false accusations such as "the Duke Lacrosse case," which "supposedly had a full and thorough investigation." Tr. at 142. Without question, the characterization of defense counsel's line of argumentation as "how guilty people walk" and a "trick," is inconsistent with the requirement that lawyers "demonstrate respect for the legal system and for those who serve it, including . . . other lawyers," *see* Preamble [5], Ind. Professional Conduct Rules. But the defendant has failed to establish that, under all of the circumstances, such improper comments placed him in a position of grave peril to which he would not have been subjected otherwise. *See* Cooper, 854 N.E.2d at 835; Marcum, 725 N.E.2d at 859–60. In Marcum, this Court held it could not conclude that comments such as "what this is, is a response to your nonsense," "Judge I guess we can move the jury out and we can do a quick evidence course here for [defense counsel]," and "He is trying to mislead this jury" affected the jury's verdict in light of the evidence as a whole. 725 N.E.2d at 858–60. Similarly, in Brock v. State, this Court found that the prosecutor's statement that defense counsel was "pulling the most low life tricks in this case," was improper but did not place the defendant in grave peril. 423 N.E.2d 302, 304–05 (Ind. 1981) (noting that defense counsel

6

conceded it was a "rather insignificant" personal matter). This case is less egregious than Mar-cum and Brock; we find no prosecutorial misconduct.

Third, the defendant argues that the prosecutor improperly commented on the truthfulness of the victim[5] during closing argument and on rebuttal. Specifically, the defendant highlights comments from closing argument: "she told you the truth. As uncomfortable and awkward as she was up there, she told you the truth of what happened. . . . she is credible . . . She has every reason to have lied and covered for him and she didn't." Appellant's Br. at 16 (quoting Tr. at 139–40) (emphasis deleted). And comments from rebuttal:

> She's never been dishonest. She spoke to her parents, she spoke to the principal, she spoke to Detective White, and she gave a deposition. You better believe if there had been inconsistencies in any of her statements, [defense counsel] would have been down her throat about those when she testified. But he wasn't because there aren't any. . . . And to make clear that she gets nothing out of this. She doesn't want him to get in trouble; she wants him to want to be with her. And that's why what she told you was even more cred-ible. Because if she thought she could get away with covering for him again, she would. But the jig is up; we've seen the Google Plus postings. The jig is up. She has to be hon-est now and she's done that.

Tr. at 153–54, *quoted in part by* Appellant's Br. at 16–17. The defendant further argues that the prosecutor's vouching placed him in grave peril and denied him a fair trial because this "was es-sentially a 'he said, she said' case." Appellant's Br. at 17. The State responds that the prosecutor did not personally vouch for the witness but rather "made comments about the credibility of wit-nesses that were based on reasons supported by the evidence." Appellee's Br. at 15. The de-fendant is correct that a prosecutor may not personally vouch for a witness. Schlomer v. State, 580 N.E.2d 950, 957 (Ind. 1991); *see* Ind. Professional Conduct Rule 3.4(e). But a prosecutor *may* "comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence." Cooper, 854 N.E.2d at 836 (quoting Lopez v. State, 527 N.E.2d 1119, 1127 (Ind. 1988)). In Cooper, the prosecutor characterized the defendant, who testified, as "one of the finest liars that I've ever heard testify in the courtroom but . . . a liar nonetheless." *Id.*

---

[5] In his appellate brief, the defendant also asserts that the prosecutor improperly commented on the truthfulness of FS's parents. The Court of Appeals did not address this issue, and neither party raised the issue on transfer. With regard to these statements, there was also no misconduct because the prosecu-tor properly made comments on credibility based on reasons arising from the evidence, namely lack of bias and motive.

7

at 836. This Court found no prosecutorial misconduct on this point because other evidence suggested that the defendant was not telling the truth. *Id.* Similarly, in this case, other evidence suggests that FS was telling the truth. The only evidence that FS had been dishonest, to which FS admitted at trial, was that she had lied to the defendant about physical and verbal abuse from her biological father; there was no evidence that FS had been anything but truthful to her parents, the principal, the police, and the court. The prosecutor pointed to evidence that FS was telling the truth now because, although she loved the defendant and had bias and motive not to testify against him, she could not counter the logs of their online conversations. The lack of evidence to corroborate FS's substantive testimony about what happened does not counter the prosecutor's general assertions that FS was telling the truth. There was no prosecutorial misconduct, much less fundamental error.

Fourth, the defendant argues that the prosecutor improperly urged the jury to convict the defendant because they were tired and angry over a societal problem, not necessarily because the evidence in this case warranted conviction, with the following comment on closing:

> [Y]ou wonder at night what you can say to a jury to get them to get the bigger picture here. And no case is easy for your guys, I get that. No one want[s] to judge someone else or somebody else's actions. But we keep hearing about this happening, whether it's a teacher, or a coach, or a pastor, or whoever. And we all want to be really angry and post online and have strong opinions about it. And we never think that we'll be the ones that are here that get to stop it. And you actually do get to stop it. And as much as I know you probably did not want to be here on Monday morning, I would submit to you that you are in an incredible position to stop it and send the message that we're not going to allow people to do this.

Appellant's Br. at 13–14 (quoting Tr. at 140–41) (emphasis deleted). The State disagrees, arguing that the remark to "send a message" was permissible advocacy: "a brief, isolated request to convict [the defendant] on the basis of his guilt, not an argument calculated to inflame the prejudice of the jury." Appellee's Br. at 14. The State points to Smith v. State to support its position that a prosecutor "may on final argument remark on the public demand for a conviction and may argue that the people have a right to expect the jury to remove the defendant from society." 258 Ind. 594, 601–02, 283 N.E.2d 365, 369 (1972) (approving 23A C.J.S. *Criminal Law* § 1107).

Although a prosecutor may remark on the public demand for a conviction, we have re-

peatedly emphasized that "[i]t is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt." Cooper, 854 N.E.2d at 837 (quoting Coleman v. State, 750 N.E.2d 370, 375 (Ind. 2001)); Maldonado, 265 Ind. at 500, 355 N.E.2d at 849. In Smith, the prosecutor stated in his closing argument that: "You as jurors at this stage of this proceeding have it within your power to set the moral standards for this community." 258 Ind. at 601, 283 N.E.2d at 369. After giving two reasons to convict that particular defendant, the prosecutor added, "And I say probably now, more than ever more, you are going to have to come to the spot where it's your turn to stand up and be counted." *Id.* We observed that these comments were not improper. *Id.* In the present case, however, the prosecutor alluded to the "bigger picture," to "hearing about this happening" without a chance "to stop it," and to other perpetrators such as "a teacher, or a coach, or a pastor;" and then implored the jury to "send the message that we're not going to allow people to do this." This clearly invited the jury to convict this defendant for reasons other than his own guilt, therefore constituting improper conduct. Because of our determination below regarding fundamental error, however, we decline to address whether it subjected the defendant to grave peril.

Conceding that he failed to properly preserve his prosecutorial misconduct claims, the defendant contends that the prosecutor's improper comments cumulatively resulted in fundamental error, requiring reversal and a new trial. He compares this case to Castillo, 974 N.E.2d 458, and Lainhart v. State, 916 N.E.2d 924 (Ind. Ct. App. 2009), *trans. not sought.* The State disagrees and argues that no fundamental error occurred because the jury received proper instructions and, with the overwhelming weight of evidence, the result would have been the same absent the prosecutor's comments.

Neither Castillo nor Lainhart controls this case. In Castillo, during closing arguments at the sentencing phase of trial, the prosecutor misstated Indiana law, telling the jury not to compare the mitigating and aggravating factors, and spent nearly one-third of her closing argument "implor[ing] the jury to consider the defendant's unsavory character." 974 N.E.2d at 468–69. The defendant contends that the statements in Castillo, which this Court found amounted to fundamental error, "were less egregious . . . than ones made in this case." Response to Trans. Pet. at 5. We disagree. And because we find no prosecutorial misconduct in the argument for FS's

9

credibility, we also find <u>Lainhart</u> inapplicable.  But our analysis does not end here.  Whether fundamental error has occurred depends on the particular types of misconduct committed and the evidence presented by the State in this case.  *See* <u>Taylor v. State</u>, 717 N.E.2d 90, 96 n.7 (Ind. 1999) ("The issue of fundamental error is better determined on a case by case basis.").

We recognize only a single instance of prosecutorial misconduct, namely that the prosecutor improperly urged the jury to convict the defendant for reasons other than his own guilt. But we decline to conclude that the trial court erred by not correcting the prosecutor's misstatements.

With regard to the impact of the "send the message" remark, we recognize that the prosecutor began her closing argument reminding the jury "it's about what this defendant did in this case and how you are in a unique position to be able to now hold him accountable for that," Tr. at 133–34.  Such correct statement so distanced from an improper one cannot qualify its substance, but it may counteract its harm.  Thus, while we find the "send the message" remark improper, we decline to hold that such error had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible.

Overall, the jury received preliminary and final instructions with correct statements of the law.  The instructions reminded the jury that the unsworn statements or comments of counsel on either side (including closing argument) should not be considered evidence and that the jury should base their decision on the evidence admitted at trial.  Appellant's App'x at 91, 96, 120, 122.  And the jury acquitted the defendant on one of three charges of Sexual Misconduct with a Minor—charges which differed only by the dates of commission.  *Id.* at 26–27; Tr. at 163, 172–73.  We are not persuaded that the prosecutorial misconduct in this case had an undeniable and substantial effect on the jury's decision

## Conclusion

The prosecutor improperly urged the jury to convict the defendant for reasons other than his guilt, but the defendant's failure to contemporaneously object and enable the trial court to

10

take corrective action results in procedural default of the defendant's appellate claim. The effect of this prosecutorial misconduct did not make a fair trial for the defendant impossible. Thus, the doctrine of fundamental error does not overcome procedural default. While we do not endorse the prosecutor's trial tactics in this case, we affirm the judgment of the trial court.

David, Massa, and Rush, JJ., concur.
Rucker, J. concurs in result.