## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 13 2015, 8:49 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Chris Palmer Frazier
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Titus S. Dunn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

April 13, 2015

Court of Appeals Case No.
49A02-1408-CR-588

Appeal from the Marion Superior Court

The Honorable Barbara Crawford, Judge

Cause No. 49F09-1404-FD-16610

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Titus Dunn was convicted of residential entry, a Class D felony, and found to be an habitual offender.[1] He raises one issue on appeal: whether his due process rights were violated by the State's comments during closing argument about the defense of necessity. Concluding that the issue has been forfeited for appeal, we affirm.

# Facts and Procedural History

[2] During the early morning hours of March 31, 2014, Valerie Floyd was asleep in her home when the sound of a shattering window woke her up. When she went to investigate, she encountered a man in the hallway whom she did not know. The man was later identified as Dunn. As Floyd began moving through her house toward the back door, Dunn followed, asking her if she had a gun and telling her to call the police. When Floyd opened her back door, her alarm system was activated. She ran to her neighbors' house and woke them up by banging on their bedroom window. They called 911 for her, and she stayed at their house until police arrived. During that time, Dunn also called 911 from Floyd's house.

---

[1] After the jury found Dunn guilty of residential entry, he waived his right to jury as to the habitual offender phase. The trial court found him to be an habitual offender after the presentation of evidence.

[3]     Indianapolis Metropolitan Police Department officers arrived at Floyd's house to find Dunn walking down the driveway. After speaking with Floyd and observing the damage to her home, the officers arrested Dunn. Dunn told police that he had been followed by a dark car after being released from the hospital. The car pulled into a driveway a few houses away from Floyd's and Dunn entered her house to get away. At trial, Dunn testified that it was his stepson who was chasing him and after the car pulled into the nearby driveway, his stepson had gotten out of the car brandishing a gun. Floyd had not seen any cars or pedestrians on the street when she ran to her neighbors' house, and the officers did not see anyone other than Floyd and Dunn in the vicinity of Floyd's house while investigating.

[4]     The State charged Dunn with residential entry, a Class D felony, and alleged that he was an habitual offender. At trial, Dunn asserted the affirmative defense of necessity as justification for entering Floyd's house. During closing arguments, the State told the jury:

> Now, you're going to get instructions – it's gonna be Final Instruction No. 20 um, that tell you about the necessity defense. So the State – or the defense has to prove um, seven things by a preponderance of the evid – or six things by a preponderance of the evidence.

Transcript at 214. Dunn objected, and the trial court held a side bar conference, during which the prosecutor expressed her understanding that the defendant had to prove all the elements of the necessity defense. The trial court corrected the prosecutor, stating that the defense has "to raise it and – and present evidence to support the instruction on the facts, but they don't actually have to

prove anything." *Id.* at 216.  Before the State continued its closing argument, the trial court admonished the jury as follows:

> Uh, ladies and gentlemen of the jury, uh – uh, you will get instruction on the defense of necessity which uh, under Indiana law, the defendant is required to raise – if that's something that he – he believes applies.  It is the obligation of the State to disprove one of the elements . . . .  And I'm going to give you the instruction, and what the instruction – how the instruction tells you – how the law tells you you need to look at that defense.
>
> So there will be information in the . . . instruction to tell you how to look at it or how to consider it.  Um, that the defense has to – only has to raise the – raise the defense of . . . necessity, and the State has the obligation to disprove one of the parts of it.

*Id.* at 217-18.  Upon resuming closing argument, the prosecutor correctly stated, "[F]or the defense of necessity to apply, you have to find all six [elements].  The State must only disprove one of them beyond a reasonable doubt." *Id.* at 218.

[5]     After closing arguments were concluded, the trial court gave the jury final instructions, including the following:

> The Defendant has raised the defense of necessity in this case.  The defense of necessity applies when:
>
> > (1) The act charged as criminal was the result of an emergency and was done to prevent a significant harm;
> >
> > (2) There was no adequate alternative to the commission of the act;
> >
> > (3) The harm cause[d] by the act was not disproportionate to the harm avoided;
> >
> > (4) The Defendant had a good-faith belief that his act was necessary to prevent great harm;
> >
> > (5) The Defendant's belief was objectively reasonable under all the circumstances of the case; and

> (6) The Defendant did not substantially contribute to the creation of the emergency.
>
> The State has the burden to prove beyond a reasonable doubt that the Defendant was not acting out of necessity, and may do so by disproving any one of the above facts.

Appellant's Appendix at 72. The jury found Dunn guilty of residential entry, and the trial court found him to be an habitual offender. This appeal followed.

# Discussion and Decision

[6] Dunn contends that the prosecutor's statement during closing argument impermissibly shifted the burden of proof to him and that the trial court's admonishment to the jury was insufficient to remedy the damage caused by the misstatement of law. The State argues that Dunn has waived the issue of prosecutorial misconduct, because although he now claims that the admonishment was insufficient, he did not move for a mistrial at the time. "To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial." *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). Failure to comply with these requirements forfeits a prosecutorial misconduct claim. *Delarosa v. State,* 938 N.E.2d 690, 696 (Ind. 2010).

[7] Dunn objected to the prosecutor's improper comments on the defense of necessity, and the trial court issued an admonishment to the jury to correct the

error.  However, Dunn did not request a mistrial.[2]  This is not a case where such a request would necessarily have been futile; Dunn objected to the prosecutor's statement and the trial court agreed it was a clear misstatement of the law and issued an admonishment to the jury.  If Dunn believed the admonishment was insufficient, it was incumbent upon him to request a mistrial at that time.  Having failed to do so, he has failed to preserve the issue for appeal.

[8]  Where a claim of prosecutorial misconduct has been procedurally defaulted, "[t]he defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error." *Ryan*, 9 N.E.3d at 667-68.  Review for fundamental error is not intended to grant the defendant a second bite at the apple; it is meant to permit appellate courts "to correct the most egregious and

---

[2] During a sidebar conference following the conclusion of the State's rebuttal closing argument, defense counsel requested an opportunity to present surrebuttal because "it's the defense . . . position that second closing is for rebuttal only [and] the State has brought up three additional things that they did not argue in that first close." Tr. at 231.  The trial court denied the request.  After the final instructions were read and the case submitted to the jury, defense counsel stated:

> I think in order to preserve my record for surrebuttal . . . I would  like to note – to point out to the Court that the two arguments that I think were new in the second close were that no one uh, saw any of the cars around and that Mr. Dunn waited a couple of minutes before calling the police.  And, I believe, in order to preserve the issue, I have to ask for a mistrial.

*Id.* at 232-33.  The request for mistrial was denied.  Because this request for mistrial was specific to the State's rebuttal argument, it does not preserve the earlier issue.  Dunn does not argue otherwise.  *See* Brief of the Appellant at 9 n.1.

blatant trial errors that otherwise would have been procedurally barred . . . ."
*Id.* at 668.

> In evaluating the issue of fundamental error, our task . . . is to look at the alleged misconduct in the context of all that happened and all the relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such *an undeniable and substantial effect on the jury's decision* that a fair trial was impossible.

*Id.* (emphasis in original).

[9] Assuming Dunn is correct that the prosecutor's statement "gave jurors the impression that Dunn had an obligation to affirmatively prove his innocence," Br. of Appellant at 10, we look at the alleged misconduct in the context of the entire trial. With respect to the evidence, Dunn testified regarding the events he alleged necessitated his entering Floyd's house, offering facts supporting the giving of an instruction on the defense of necessity. The State offered several witnesses whose testimony either contradicted Dunn's testimony or cast doubt on his version of events. At Dunn's request, the trial court immediately intervened when the prosecutor misstated the necessity defense during closing argument and gave the jury a correct statement of the law regarding the defense. "[W]here the trial court adequately admonishes a jury, such admonishment is presumed to cure any error that may have occurred." *Emerson v. State*, 952 N.E.2d 832, 840 (Ind. Ct. App. 2011), *trans. denied*. In addition, when the prosecutor resumed her closing argument, she restated her comments in the correct terms, and the final instructions to the jury correctly stated the law. In light of the evidence from which a reasonable jury could have

found the State had disproved at least one of the elements of the necessity defense and the multiple corrective statements given to the jury, we cannot say that the prosecutor's misstatement of law had "such an undeniable and substantial effect on the jury's decision that a fair trial was impossible." *Ryan*, 9 N.E.3d at 668 (emphasis omitted).

# Conclusion

We cannot say that the prosecutor's misstatement, in the context of all the information given to the jury, amounted to fundamental error. Accordingly, Dunn's conviction is affirmed.

Affirmed.

Bailey, J., and Brown, J., concur.