## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2016, 8:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Donte D. Lane,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 31, 2016

Court of Appeals Case No.
49A02-1511-CR-1948

Appeal from the
Marion Superior Court

The Honorable
Sheila A. Carlisle, Judge

Trial Court Cause No.
49G03-1501-F1-3216

**Kirsch, Judge.**

[1] Donte D. Lane ("Lane") was convicted after a jury trial of attempted murder,[1] a Level 1 felony, and carrying a handgun without a license[2] as a Class A misdemeanor and was sentenced to thirty-five years with thirty years executed. Lane appeals his conviction for attempted murder and raises the following restated issue for our review: whether the State committed fundamental error by engaging in prosecutorial misconduct during closing arguments.

[2] We affirm.

## Facts and Procedural History

[3] In the early morning hours of January 23, 2015, Breianda Butler ("Butler") and Brittany Scales ("Scales") were working as sales clerks at an adult bookstore in Indianapolis, Indiana. At approximately 1:30 a.m., Ryan Tharpe ("Tharpe"), the father of Scales's daughter, came into the store to get a house key from Scales and to let her know he was taking the car, but would return to pick her up later. Tharpe was accompanied by Lane, his cousin. Lane was acting "belligerent and ignorant" and was "[b]eing obnoxious, loud for no reason, cussing." *Tr.* at 19, 20. Butler felt that Lane was being rude and bothering the customers in the store so she asked him to leave the store. Lane initially responded that he did not have to leave, and Butler told him she would call the

---

[1] *See* Ind. Code §§ 35-42-1-1(1), 35-41-5-1.

[2] *See* Ind. Code § 35-47-2-1.

police if he did not leave. *Id.* at 23. Butler did call 911, and Lane and Tharpe left the store while Butler was still on the phone.

[4] About an hour later, Lane returned to the store. He had his hood pulled up and stepped inside the doorway of the store, said "fuck you, bitch," and pulled a handgun from his pocket. *Id.* at 28. Lane fired the gun six or seven times at Butler, striking her three times, once in the right hip, once in the lower left buttocks, and once in the lower left leg. Lane was ten or fifteen feet away from Butler when he fired the shots. Although Scales was closer to Lane when he began shooting, she was not hit by any of the shots. Lane left the store immediately after the shooting, and Butler, who had fallen to the ground after being shot, was able to hop to the door and locked it. Scales called 911, and the two women waited in the restroom for the police to arrive.

[5] The police arrived, and Butler was taken to the hospital. As a result of the injuries she sustained from the gunshot wounds, Butler suffers from severe neuropathy and must wear a leg brace because of nerve damage. Both Butler and Scales were able to identify Lane from a photo array as the shooter. The police recovered six spent shell casings from just inside the door of the store, and the casings were later determined to be fired from the same gun.

[6] Lane was arrested, and the State charged him with attempted murder as a Level 1 felony, possession of an altered handgun as a Level 5 felony, and carrying a handgun without a license as a Class A misdemeanor. Prior to the jury trial, the possession of an altered handgun charge was dismissed. At the close of

evidence in the trial, Lane's counsel requested that the trial court instruct the jury on battery as a Level 5 felony, as a lesser included offense of attempted murder, and the State conceded that the instruction was proper. The jury was given the instruction, and in his closing argument, Lane's counsel argued that the evidence supported a verdict of Level 5 felony battery. During the State's rebuttal argument, it responded to Lane's argument and made the following statement:

> [Y]ou're going to be able to consider the lesser included offense of battery. I ask – I'd ask that if you decide to convict . . . Lane of battery with a deadly weapon and not attempt[ed] murder, that you simply find him not guilty because the justice that [the other deputy prosecutor] just spoke of, doing that would be a disservice to justice, and it would be a complete disregard to the evidence in this case.

*Tr.* at 192. The jury found Lane guilty as charged of attempted murder as a Level 1 felony and carrying a handgun without a license as a Class A misdemeanor. He was sentenced to an aggregate term of thirty-five years with thirty years executed in the Department of Correction. Lane now appeals.

## Discussion and Decision

[7] When reviewing an allegation of prosecutorial misconduct, we make two inquiries. First, we determine by reference to case law and rules of conduct whether the prosecutor engaged in misconduct, and if so, we next determine whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected

otherwise. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

[8] Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection but must also request an admonishment; if the admonishment is not given or is insufficient to cure the error, then the defendant must request a mistrial. *Neville v. State,* 976 N.E.2d 1252, 1258 (Ind. Ct. App. 2012), *trans. denied.* Here, Lane concedes that he did not object to the challenged statements made by the prosecutor during closing argument. Where a defendant does not raise a contemporaneous objection, request an admonishment, or, where necessary, request a mistrial, the defendant does not properly preserve his claims of prosecutorial misconduct. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006).

[9] "To prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, the defendant must establish not only the grounds for the prosecutorial misconduct, but also the additional grounds for fundamental error." *Neville,* 976 N.E.2d at 1258. Fundamental error is an "extremely narrow exception" to the contemporaneous objection rule that allows a defendant to avoid waiver of an issue. *Cooper*, 854 N.E.2d at 835. "For a claim of prosecutorial misconduct to rise to the level of fundamental error, it must 'make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm.'" *Neville*, 976 N.E.2d at 1258-59 (quoting *Booher v. State*,

773 N.E.2d 814, 817 (Ind. 2002)). The element of harm is not shown by the fact that a defendant was ultimately convicted. *Id*. Instead, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Ryan*, 9 N.E.3d at 668 (quotation marks omitted).

[10] Lane argues that the prosecutor engaged in misconduct when he made certain statements during the rebuttal portion of his closing argument. Lane contends that the statements urged the jury to convict him of attempted murder even if the jury determined that he was only guilty of battery. Lane asserts that the statements were misconduct because they appealed to the jury's passions by suggesting that a conviction for battery was as good as no conviction at all and by insisting that justice would not be served if the jury only convicted on battery. He claims that this misconduct placed him in grave peril because the persuasive effect of the statements was substantial and constituted fundamental error because the jury was urged to convict him of attempted murder even if the evidence did not support that charge.

[11] Lane specifically asserts that the prosecutor committed misconduct by making the following comments in the rebuttal portion of the State's closing argument:

> [Y]ou're going to be able to consider the lesser included offense of battery. I ask – I'd ask that if you decide to convict . . . Lane of battery with a deadly weapon and not attempt[ed] murder, that you simply find him not guilty because the justice that [the other deputy prosecutor] just spoke of, doing that would be a

disservice to justice, and it would be a complete disregard to the evidence in this case.

*Tr.* at 192. In his closing argument, defense counsel had focused on his contention that Lane had shot at Butler without the intent to kill and urged the jury to find Lane guilty of the lesser included offense of battery with a deadly weapon. Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. *Cooper*, 854 N.E.2d at 836.

[12] The State's rebuttal argument focused on the evidence presented surrounding the shooting and how that evidence demonstrated that Lane intended to kill Butler when he shot at her six times. The prosecutor's comments on rebuttal that Lane challenges were simply an argument that the evidence presented at trial did not reasonably support a finding that Lane did not intend to kill Butler when he fired at her six times at a close distance, shooting her three times. In fact, the portion of the rebuttal that Lane takes issue with actually states that convicting Lane of the lesser included offense of battery, "would be a complete disregard to the evidence in this case." *Tr.* at 192. We conclude that the prosecutor's comments were proper and were merely advising the jury to determine that the evidence presented by the State allowed only for the finding that Lane acted with the specific intent to kill Butler. The prosecutor did not engage in misconduct; therefore, Lane was not placed in a position of grave peril as a result of the prosecutor's comments.

[13] Notwithstanding that we conclude that there was no prosecutorial misconduct, even had there been, Lane must prove that the State's actions reached the level of fundamental error. "In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury -- including evidence admitted at trial, closing argument, and jury instructions -- to determine whether the misconduct had such *an undeniable and substantial effect on the jury's decision* that a fair trial was impossible." *Ryan*, 9 N.E.3d at 668 (emphasis in original).

[14] In looking at the challenged comments in light of these things, we do not believe that the comments by the prosecutor had a substantial effect on the jury's decision, making a fair trial impossible. The remarks that Lane takes issue with were, as previously stated, simply an argument that the evidence presented at trial did not reasonably support a finding that Lane did not intend to kill Butler when he fired at her six times at a close range, shooting her three times. The remarks were mentioned once and not made repeatedly and were made in rebuttal to Lane's closing argument where counsel appealed to the jury that Lane merely "shot in [Butler's] direction," "didn't intend to kill [Butler]" because he left when he still had bullets, and just "wanted to scare her, but kind of up the ante." *Tr.* at 186, 187. Evidence was presented during the trial that included testimony from Butler and Scales of what occurred and the surveillance video, which clearly depicted Lane's actions of entering the store and firing six shots at Butler, hitting her three times.

The jury was given instructions on the elements of both battery with a deadly weapon as a Level 5 felony and attempted murder, particularly that in order to find Lane guilty of attempted murder, the State had to prove beyond a reasonable doubt that Lane shot a handgun at Butler with the specific intent to kill her. *Appellant's App*. at 100, 126, 127. The jury was also instructed that if the State failed to prove that Lane committed attempted murder, it could consider whether Lane committed Level 5 felony battery. *Id*. at 125. Jury instructions were also given that informed the jury that it was the judge of both the law and the facts, that its verdict should only be based on the evidence admitted and instructions on the law, that the final arguments were not evidence and the jury could reject the arguments as it saw fit, and that the verdict should be based on the law and facts as the jury saw them and not on sympathy or bias. *Id*. at 96, 109, 112, 133. We, therefore, conclude that in the context of all that occurred during the trial and all relevant information given to the jury, the alleged misconduct did not have a substantial effect on the jury's decision, and it has not been proven that a fair trial was impossible. Lane has not shown that fundamental error occurred.

Affirmed.

Riley, J., and Pyle, J., concur.