## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2018, 6:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha Griffin
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stefan Murphy,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 20, 2018

Court of Appeals Case No.
18A-CR-1208

Appeal from the Marion Superior Court

The Honorable David Hooper, Magistrate

Trial Court Cause No.
49G12-1703-CM-11652

**Crone, Judge.**

# Case Summary

Stefan Murphy appeals his conviction for class A misdemeanor intimidation. He asserts that the State presented insufficient evidence to support his conviction and that the prosecutor committed misconduct during closing argument that constituted fundamental error. Finding the evidence sufficient and no misconduct or fundamental error, we affirm.

# Facts and Procedural History

On January 27, 2017, Murphy entered a Chase Bank in Castleton to cash a check. Murphy did not have an account with Chase, but the check was written on a Chase account. Chase has a policy that individuals who do not have an account with Chase must pay an $8.00 check cashing fee. Murphy cashed the check and was charged the fee. He became angry and asked to speak with the branch manager about the fee.

The manager, Patrick Canny, informed Murphy about Chase's policy and explained to him that there was nothing he could do because the fee was nonrefundable. Canny apologized and informed Murphy that the bank could give him the check back and he could go elsewhere to cash it if he wished.

Murphy told Canny that he wanted a refund of the $8.00 fee or he would pursue legal recourse against Canny and Chase. Canny again stated that there was nothing he could do, and he went to his office to retrieve a business card to give to Murphy. Canny exited his office, handed Murphy the card, and returned to his office, with Murphy trailing behind him. After Canny entered

his office, Murphy stood in the doorway of the office and said, "[I]f I weren't in a bank right now, I'd be kicking your ass." Tr. Vol. 2 at 11. Murphy then stepped into Canny's office and shut the door. He flung Canny's card at him and again threatened Canny that he was going to "kick [his] f'ing ass." *Id*. at 12. Murphy told Canny, "This isn't over. I'm going to f you up when I see you, you know, I'll see you again." *Id*. Murphy approached Canny, who was sitting in a chair, and stood over him with his legs pressed against the chair. Murphy shoved his finger against Canny's nose while he leaned over him. Murphy noticed that Canny was shaking in fear, and he began mocking Canny. Canny told Murphy that he needed to leave, but when Canny attempted to stand, Murphy pushed him back into the chair with a "chest bump." *Id*. at 15. Murphy repeated that he was going to find Canny later, and then pushed Canny back into the chair when Canny attempted to stand up. On Canny's third attempt to stand, Murphy chest-bumped Canny again, but Canny fell to the side of his desk and was then able to slide around Murphy and escape into the bank lobby.

[5] As the two men were exiting the office, Murphy yelled at Canny and put his finger in Canny's face saying, "You are a f***king racist and I'm not done. I will be back." *Id*. at 54. Murphy left the bank. After he was gone, bank employees called the police. Canny subsequently identified Murphy from a photo lineup.

[6] The State charged Murphy with one count of class A misdemeanor intimidation and one count of class B misdemeanor battery. Following a trial,

the jury found Murphy guilty of the class A misdemeanor. The trial court sentenced him to a one-year term, fully suspended to nonreporting probation. This appeal ensued.

## Discussion and Decision

## Section 1 – The evidence is sufficient to support Murphy's conviction.

Murphy contends that the State presented insufficient evidence to support his intimidation conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.* In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it. *Id.* at 500.

To convict Murphy of class A misdemeanor intimidation, the State was required to prove that Murphy communicated a threat to Canny with the intent that Canny be placed in fear of retaliation for a prior lawful act. Ind. Code § 35-45-2-1(a)(2). Murphy asserts that the State presented insufficient evidence that his comments to Canny constituted a threat and further that the State failed to prove his intent to place Canny in fear of retaliation for a prior lawful act, namely, the imposition of the check cashing fee. We disagree.

[9] First, we reject Murphy's suggestion that his comments to Canny did not constitute a threat. The intimidation statute defines "threat" as an "expression, by words or action, of an intention to ... unlawfully injure the person threatened ... [or] commit a crime[.]" Ind. Code § 35-45-2-1(d)(1), -(d)(3). Our supreme court clarified in *Brewington v. State* that "true threats" depend on two necessary elements: (1) that the speaker intend for his communications to put his target in fear for his safety and (2) that the communications were likely to actually cause such fear in a reasonable person similarly situated to the target. 7 N.E.3d 946, 964 (Ind. 2014), *cert. denied* (2015). We find the evidence sufficient as to both elements. Murphy repeatedly told Canny that he knew where to find him, that he was going to kick his ass, and that "[t]his isn't over." Tr. Vol. 2 at 12. The words used, coupled with an angry tone of voice and aggressive physical behavior, support a reasonable inference that Murphy intended for his communications to put Canny in fear for his safety. Moreover, it was reasonable for the jury to infer that such communications were likely to actually cause fear in a reasonable person similarly situated to Canny. Canny testified that he was scared and shaking both during and after the incident, and that he believed that Murphy was planning to find him and cause him physical harm. Under the circumstances, the evidence was sufficient to establish that Murphy's words to Canny constituted a true threat.

[10] In addition to proving that a threat was issued, the State was also required to prove that the threat itself was delivered with the intent to place Canny in fear of retaliation for a prior lawful act. That is to say, the State must demonstrate a

clear nexus between a prior lawful act and the threat. *Roar v. State,* 52 N.E.3d 940, 944 (Ind. Ct. App. 2016), *summarily aff'd by* 54 N.E.3d 1001 (Ind. 2016). The charging information specified that the prior lawful act was "the check cashing fee" imposed by the bank. Appellant's App. Vol. 2 at 18. Murphy argues that because it was technically the bank that charged him the fee, and not Canny, it was not Canny's prior lawful act that Murphy was allegedly retaliating against. We are not persuaded by Murphy's attempt to distinguish between Canny and the bank in this situation. Canny was the branch manager who informed Murphy of the fee policy and his inability to refund the imposed fee, and the State presented ample evidence that Murphy's anger and hostility toward Canny immediately followed. There was a clear nexus between Canny's lawful act as a bank representative and Murphy's threat against him. The State presented sufficient evidence to support the conviction.

## Section 2 – Murphy has failed to establish prosecutorial misconduct or fundamental error based thereon.

[11]    Murphy also asserts that the prosecutor committed misconduct at multiple points during his closing argument. In reviewing a properly preserved claim of prosecutorial misconduct, we must consider first whether misconduct occurred and second whether the misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Williams v. State*, 724 N.E.2d 1070, 1080 (Ind. 2000). Murphy concedes that he did not properly preserve his prosecutorial misconduct claim, and therefore, he must establish not only the grounds for the misconduct but also the additional grounds for fundamental

error. *Ryan v. State*, 9 N.E.3d 663, 667-68 (Ind. 2014).[1] The fundamental error exception to the contemporaneous objection rule is extremely narrow and applies only when the error constitutes a blatant denial of basic due process principles that makes it impossible to receive a fair trial. *Id.* To establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm. *Id.*

[12] Murphy's first assertion of prosecutorial misconduct concerns the prosecutor's alleged misstatement of evidence. Specifically, Murphy points to the following passages from closing argument:

> The things you heard Mr. Canny testify the defendant said to him. Those are threats. Don't leave your common sense at the door when you walk back there. You know that is a threat somebody going up to a bank manager and screaming that *I'm gonna come back here and kick your ass*, that's a threat. So, we've proved that.

Tr. Vol. 2 at 81 (emphasis added).

> [Canny] sat right here and he said that he was shaking, that the defendant saw him, *and that he started to mock him, because he was scared*.

---

[1] To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Ryan*, 9 N.E.3d at 667.

*Id*. at 82-83 (emphasis added).

[13]     Murphy argues that the prosecutor misstated the evidence because there was no evidence that Murphy actually screamed that he was going to come back to the bank and batter Canny, and further there was no direct testimony as to why Murphy was later mocking Canny. We disagree with Murphy's assertion that the above passages contain misstatements of evidence. Canny testified that Murphy repeatedly threatened that "[t]his isn't over" that he would "find" Canny, and that he would "f" Canny up when he saw him "again." *Id*. at 12, 44. Moreover, Canny testified that as Murphy leaned over his chair, he inquired "why you shaking[,]" and Canny explained that he believed that Murphy was clearly mocking him for being scared. *Id*. at 44-45. The above-quoted statements by the prosecutor were accurate summaries of the evidence presented, followed by permissible arguments as to the inferences to be drawn from the evidence. *See Neville v. State*, 976 N.E.2d 1252, 1260 (Ind. Ct. App. 2012) (noting that prosecutor may properly argue logical or reasonable conclusions to be drawn from evidence). The prosecutor's statements did not constitute misconduct.

[14]     Next, Murphy claims that the prosecutor committed misconduct by improperly asserting his personal opinion on the element of intent. *See Gaby v. State*, 949 N.E.2d 870, 880-81 (Ind. Ct. App. 2011) (noting that an attorney should not assert personal knowledge of facts in issue except when testifying as a witness) (citing Ind. Professional Conduct Rule 3.4(e)). Murphy directs us to when the prosecutor said,

> We also have to prove the defendant intended that Mr. Canny be placed in fear of retaliation because of a prior lawful act. Well, *I certainly think that he intended Mr. Canny to be placed in fear of retaliation because of what [Murphy] said*.

Tr. Vol. 2 at 81-82 (emphasis added). Contrary to Murphy's assertion, when this statement is viewed in context, it is apparent that the prosecutor was not asserting any personal knowledge as to Canny's intent. Instead, the prosecutor was simply commenting on a reasonable conclusion based upon the weight of the evidence and, despite the use of the pronoun "I," there was absolutely no implication that the prosecutor had access to any special information outside of the evidence presented to the jury. The prosecutor did not commit misconduct in making this statement.

[15] Finally, Murphy makes a convoluted argument that the prosecutor committed misconduct by relying on evidence that was admitted in violation of a pretrial motion in limine precluding the State's witnesses from speculating as to his intent. Murphy again directs us to when the prosecutor summarized Canny's testimony that Murphy "started to mock [Canny], because [Canny] was scared." *Id*. at 82. Murphy argues that Canny's testimony supporting the prosecutor's statement was inadmissible speculation regarding Murphy's intent. However, Murphy failed to object to Canny's testimony at trial and consequently has waived any argument regarding its admissibility. *Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012). Thus, even if we were to assume misconduct on the part of the prosecutor in relying on the evidence, Murphy would need to establish two levels of fundamental error: fundamental error by

the trial court in admitting Canny's testimony, and fundamental error by the trial court in permitting the prosecutor to summarize that testimony. Murphy cannot meet this high bar. There was ample evidence regarding Murphy's intent, such that we cannot say that Canny's isolated statement, and the prosecutor's brief summary thereof, presented an undeniable and substantial potential for harm.

In sum, Murphy has failed to demonstrate that the prosecutor committed misconduct in the first place, much less that he was denied a fair trial as a result. Because Murphy has demonstrated neither prosecutorial misconduct nor fundamental error, we affirm his conviction.

Affirmed.

Vaidik, C.J., and Mathias, J., concur.