# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 03 2020, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rebecca L. Gray
The Law Offices of Rebecca Gray, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Justin C. Gray,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 3, 2020

Court of Appeals Case No.
19A-CR-982

Appeal from the
Shelby Circuit Court

The Honorable
Trent Meltzer, Judge

Trial Court Cause No.
73C01-1711-F5-122

**Vaidik, Judge.**

# Case Summary

[1] Justin C. Gray appeals his conviction for child exploitation as a Level 5 felony, arguing that the trial court committed fundamental error by allowing certain testimony. We affirm.

# Facts and Procedural History

[2] Gray was in a relationship with J.S. ("Mother") from 2015 until 2017. He moved in with Mother and her two children in July 2015. Gray would sometimes watch Mother's daughter, H.S., while Mother was away from home. In August and September of 2016, when H.S. was five years old, Gray used his cell phone to take photos of H.S.'s vagina. Through a series of events not relevant here, Gray's phone made its way to the Indiana State Police.

[3] The State charged Gray with child exploitation as a Level 5 felony and possession of child pornography as a Level 6 felony. A jury trial was held, and Gray testified in his own defense that he took the photos because he was concerned about H.S.'s vaginal health. There is evidence that H.S. suffered from yeast infections and urinary tract infections in 2016, but Mother testified that she never asked Gray to take the photos, that he never showed her any of the photos, and that he never told her that he took the photos. The jury found Gray guilty as charged. The trial court merged the two counts, entered a conviction on the child-exploitation count only, and sentenced Gray to four years in prison.

[4]     Gray now appeals.

# Discussion and Decision

[5]     Gray's appeal concerns certain testimony by Indiana State Police Detective Kenneth Lee. Under direct examination by the State, Detective Lee described his investigation. The prosecutor asked, "Did you ever make actual contact with an individual by the name of Justin Gray?" Tr. Vol. II p. 161. Detective Lee answered, "I did." *Id.* After he identified Gray in the courtroom, Detective Lee had the following exchange with the prosecutor:

> Q      And so after you had gotten the information or did you actually get information from Sergeant Deckard as far as the cellphone forensic report?
>
> A      Yes. Prior to meeting Justin Gray I had already had that information.
>
> Q      After receiving that information from Sergeant Deckard did you actually prepare charges and a probable cause in this particular case?
>
> A      Not before attempting to interview Justin Gray.
>
> Q      Okay. And so then after that you had - went ahead and presented charges and a probable cause to the Prosecutor's Office, correct?
>
> A      That's correct.

*Id.* Gray contends that Detective Lee's testimony about "meeting Justin Gray" and "attempting to interview Justin Gray" is "evidence eluding [sic] to [Gray's] refusal to submit to questioning by a police officer" and that this "use of [his] silence as substantive evidence" violated his privilege against self-incrimination under the Fifth Amendment to the U.S. Constitution and Article 1, Section 14 of the Indiana Constitution. Appellant's Br. p. 8. The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself[.]" Likewise, Article 1, Section 14 provides, in part, "No person, in any criminal prosecution, shall be compelled to testify against himself."

[6] As an initial matter, Gray acknowledges that he did not raise this issue in the trial court, either by objecting to the questions and/or answers or by asking the trial court to take some remedial action. This would normally constitute waiver of the issue for appeal. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014), *reh'g denied*. However, Gray asserts that the trial court's failure to intervene was fundamental error. "Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible." *Id.* at 668. To establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because the alleged error constituted a clearly blatant violation of basic and elementary principles of due process and presented an undeniable and substantial potential for harm. *Id.* In evaluating a claim of fundamental

error, our task is to look at the alleged error in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the alleged error had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. *Id.*

[7] For three reasons, we find no fundamental error.[1] First, it is a long leap to say that Detective Lee's testimony alluded to a "refusal to submit to questioning by a police officer." He merely testified to "meeting Justin Gray" and "attempting to interview Justin Gray." The fact that no interview actually occurred does not necessarily mean that Gray refused to submit to questioning. The record is silent as to why no interview took place.

[8] Second, even if Detective Lee's testimony could be understood to mean that Gray refused to answer questions, Gray has not shown that the testimony was inadmissible. Gray first asserts that this case involves post-arrest, pre-*Miranda* silence, which we have held cannot be used as substantive evidence in the State's case-in-chief. *See, e.g., Peters v. State*, 959 N.E.2d 347, 353 (Ind. Ct. App. 2011). However, there is no evidence that Gray was under arrest or otherwise in custody when Detective Lee attempted to interview him. Gray says that he "would not have felt as though he was free to leave and would ha[ve] been

---

[1] Gray does not tell us what sua sponte action he thinks the trial court should have taken (e.g., stop Detective Lee from answering the prosecutor's questions, admonish the jury to disregard the questions and answers, give a final instruction on the issue, declare a mistrial). This alone is arguably fatal to his claim that the trial court committed fundamental error by failing to take action.

subject to the same constraints as if he was under formal arrest," Appellant's Br. p. 11, but he offers no citations to the record in support of that claim.

[9] In the alternative, Gray contends that his alleged refusal to answer was inadmissible even if it was pre-arrest, pre-*Miranda*. But Gray himself acknowledges that the United States Supreme Court has held that a defendant's pre-arrest, pre-*Miranda* refusal to answer an investigating officer's questions can be used as substantive evidence unless the defendant explicitly stated that he was refusing to answer on Fifth Amendment grounds. *Salinas v. Texas*, 570 U.S. 178, 185-86 (2013). Gray does not assert that he explicitly invoked his Fifth Amendment privilege against self-incrimination when Detective Lee attempted to interview him.

[10] Instead, Gray argues that, "[n]otwithstanding *Salinas*, this court is free to interpret Article [1], § 14 of the Indiana Constitution so as to give broader protection to Indiana's citizens." Appellant's Br. p. 11. He asks us to hold "that, under the Indiana Constitution, an individual's exercise of his right against self-incrimination cannot be used as substantive evidence in a criminal prosecution regardless of when the exercise of the privilege occurred and regardless of whether the individual explicitly invoked the privilege." *Id.* He does not cite any caselaw or any other authority in support of that proposed interpretation. But even if we were to adopt his proposed rule, we would not find that the trial court committed fundamental error by failing to predict such a ruling. In other words, because no such ruling existed at the time of Detective

Lee's testimony, the trial court could not be faulted for failing to take action, sua sponte, after hearing that testimony.

[11]   Third and finally, as the State emphasizes, the reference to Detective Lee meeting Gray and attempting to interview him was brief and isolated. The prosecutor did not ask any further questions on the matter or mention it during his opening statement or his closing argument. Gray has not convinced us that Detective Lee's single, passing reference to their interaction "had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible." *Ryan*, 9 N.E.3d at 667.

[12]   For all these reasons, the trial court did not commit fundamental error.

[13]   Affirmed.

Najam, J., and Tavitas, J., concur.