# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 27 2018, 11:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Peter D. Todd
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Moussa I. Dahab,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 27, 2018

Court of Appeals Case No. 20A03-1706-CR-1369

Appeal from the Elkhart Superior Court

The Honorable Kristine Osterday, Magistrate

Trial Court Cause No. 20D01-1503-F5-77

**Barnes, Judge.**

# Case Summary

Moussa I. Dahab appeals his conviction for Level 5 felony battery with a deadly weapon. We reverse and remand for retrial.

# Issue

The sole issue before us is whether the prosecutor committed misconduct that amounts to fundamental error.

# Facts

Dahab was employed at Chassix, a manufacturing company located in Elkhart County. Rafed Alsaad also worked at Chassix as a team leader and occasionally supervised Dahab's work.[1] Both men are of Middle Eastern descent. In July 2014, Alsaad told his superiors at work that Dahab had misloaded machine components. Dahab, who denied making the mistake, became very angry and shouted at Alsaad. In October 2014, Dahab again berated Alsaad, allegedly without provocation.

On January 22, 2015, Alsaad was again supervising Dahab, and they argued multiple times. As Alsaad collected readings from a machine, Dahab struck him twice with a metal pipe. When Alsaad asked why Dahab had struck him,

---

[1] Dahab states Alsaad's first name as "Rafal" in his brief, while the State refers to him as "Rafed." At trial, Alsaad identified himself on the stand as "Rafed Alsaad"; we will do so here. Tr. Vol. II p. 161.

Dahab replied, "F*** you.  This is ISIS."[2]  Tr. Vol. II p. 182.  Alsaad sustained significant head wounds.

On March 30, 2015, the State charged Dahab with Level 5 felony battery with a deadly weapon and Level 6 felony battery resulting in moderate bodily injury. Dahab was tried by a jury on May 16, 2017.  Before the trial commenced, Dahab filed a motion in limine seeking to bar the terroristic statement as irrelevant and overly prejudicial hearsay.  Defense counsel denied that Dahab had made the statement and argued that the resulting question of credibility was unlikely to be resolved in Dahab's favor given societal "animosit[ies]."  *Id.* at 18.  The State countered that the statement was relevant to establishing the extent to which Alsaad—an Iraqi refugee who had fled his country after aiding the United States—was afraid of Dahab.  The trial court denied the motion as to any general references to the Muslim faith, stating:

> . . .[T]he Court finds very clearly that it would be improper to bring up the religious term "Muslim."  It doesn't seem relevant in the circumstances.
>
> And I would agree with you, [defense counsel], [that such reference] has the ability to really inflame, potentially inflame, some of the people in our area.

---

[2] The Islamic State of Iraq and Syria or "ISIS" is a terrorist organization.

*Id.* at 20. Regarding "any mention of any foreign terrorist groups," the trial court took the matter under advisement, stating that it would "see how the facts play[ed] out . . . ." *Id.* The trial court added,

> If the State is able to induce [sic] testimony through the alleged victim in this case regarding comments that were allegedly made by the defendant regarding ISIS, [defense counsel], I respectfully disagree with you, that's not hearsay. That's a statement of a party opponent and if the State is able to elicit that testimony I do believe that is relevant and it is admissible but we will wait to see how the facts play out. Certainly, [defense counsel], you are free to attack the credibility of that witness's recollection of the events as you see fit.

*Id.*

[6] Ultimately the trial court allowed Alsaad to testify that Dahab said, "This is ISIS." *Id.* at 182. Also, Alsaad testified that, in 2006, he fled Iraq after being targeted for aiding the United States military; and that he and his family were granted asylum to enter the United States as refugees in 2012. The following colloquy then ensued between Alsaad and the prosecutor, without objection from defense counsel:

> Q: So was—is your understanding of ISIS, is that a terrorist organization?
>
> A: Yes.
>
> * * * * *

Q:      So does the term ISIS or does that group—does that scare you?

A:      It scare me and I take, like, really serious.  That's why— it's just scare me because myself but it's my family.

*Id.* at 183-184.  Alsaad testified further that, the day after the incident, he and his wife encountered Dahab outside a grocery store.  Dahab gestured to him, and Alsaad described the encounter as follows:

Q:      It was in the afternoon. When he was saying, "Come on. Come on," what did you think that meant or what did that mean to you?

A:      It's not this way –when he start to say come on he asked me to take off from my car, and when I just turned my car and I left he just smile and he do the sign and this sign in our country is, like, different from here.  This here is for peace.  In our country, it's like victory or ISIS win.

[Prosecutor]: And just for the record, the State would ask the record to reflect the witness was holding up two fingers when he was talking about the gesture that was made.

THE COURT: The record will so reflect.

[Prosecutor]:  So, typically, in the U.S. when somebody holds their two fingers up like that people think that means peace, right?

A:      Yes . . .

Q: Okay. And you're saying in the Middle East that means something different?

A: Yes.

Q: What does that mean in the Middle East?

* * * * *

A: That's mean ISIS win. . . . .

Q: So did you feel threatened by that gesture?

A: Yes . . .

*Id.* at 197-98. In her closing remarks, the prosecutor stated,

[Dahab had] been intimidating Rafed Alsaad the entire eight months since he met Rafed Alsaad at Chassix. That's what was going on, that's what [Alsaad] testified to.

And why was he doing that? Was he part of ISIS? Who knows. That was what he said. Who knows if that's what it really was or if that's what he knew would scare Rafed Alsaad.

*Id*. at 170.

[7] Additionally, in the following exchange, the prosecutor elicited testimony that Dahab was court-ordered to pay Alsaad's medical bills in advance of trial:

Q: Did you do anything else to protect yourself and your family from [Dahab]?

* * * * *

[Alsaad]:     It's for the medical bills. It's coming too high and I can't pay, that's why I went to the court, ask if he's guilty or he need to pay.

Q:     So did the Court order him to pay your medical bills?

A:     Yes.

*Id.* at 199-200. Again, defense counsel did not object. After Dahab testified, the trial court posed the following juror question to Alsaad, "For clarification, did [the] court already ask Dahab to pay [your] medical bills?" Tr. Vol. III p. 9. Alsaad replied, "Yes." *Id*.

[8]     Additionally, the State presented the testimony of Chassix line leader Andrew Holley-Potter, who responded to Alsaad's radio distress call and saw Dahab in a posture of swinging the pipe to hit Alsaad "again":

> [Alsaad] was calling for help saying he was hit. I took off towards his area. I'm the first one there to see them both wrestling over a pipe and, at that time, I got over there to where [Dahab] was getting ready to hit [Alsaad] again, and I was able to grab the pipe.

*Id.* at 24. Dahab testified that on the date of the incident, Alsaad initiated the physical confrontation; that he did not strike Alsaad; and that Alsaad's injuries may have occurred when Alsaad "slipped" and "landed on the pipe" as they struggled. *Id*. at 121.

On May 17, 2017, the jury found Dahab guilty on both counts. The trial court merged the Level 6 felony battery resulting in moderate bodily injury into the Level 5 felony battery with a deadly weapon due to double jeopardy concerns and sentenced Dahab to three years in the Department of Correction, with two years ordered suspended to probation. He now appeals.

## Analysis

Dahab argues that the State deployed evidentiary harpoons—namely, the prosecutor's references to his court-ordered advance payments and statements linking him to ISIS—during the course of his jury trial. An evidentiary harpoon is deployed when the prosecution places inadmissible evidence before the jury for the deliberate purpose of prejudicing jurors against the defendant. *Evans v. State,* 643 N.E.2d 877, 879 (Ind. 1994).

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial.

*Ryan v. State,* 9 N.E.3d 663, 667 (Ind. 2014).

[11]   Where, as here, the appellant has waived his or her claim of prosecutorial misconduct by failing to preserve the claim of error, we apply a different standard of review. As our supreme court has explained,

> The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." The element of such harm is not established by the fact of ultimate conviction but rather "depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled."

*Id*. at 668 (internal citations and quotations omitted). In evaluating the issue of fundamental error, our task in this case is to "look at the alleged misconduct in the context of all that happened and all relevant information given to the jury— including evidence admitted at trial, closing argument, and jury instructions— to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible." *Id.*

## I. Prosecutorial Misconduct

### A. ISIS References

We begin by addressing the prosecutor's various references to ISIS. Indiana Evidence Rule 403, governing exclusion of relevant evidence for reasons of prejudice, confusion, or other reasons, provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needless presenting cumulative evidence.

Evid. R. 403. Most notably for purposes of our analysis, Rule 403 provides for the exclusion of even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The balancing of the probative value against the danger of unfair prejudice must be determined with reference to the issue to be proved by the evidence. *Bryant v. State,* 984 N.E.2d 240, 249 (Ind. Ct. App. 2013).

The prosecutor argued that the terroristic references showed the jury the extent to which Alsaad—an Iraqi national turned United States refugee—was afraid of Dahab. However, the key issue at trial was whether Dahab knowingly or intentionally battered Alsaad and either used a deadly weapon or caused moderate bodily injury. That there was animus between Dahab and Alsaad was readily established by evidence of the men's documented history of verbal altercations and their fraught workplace dynamic, in which Dahab believed that

Alsaad was intentionally discrediting him and undermining his job performance to their superiors at Chassix.

[14] We must attempt to balance the mandate of Evidence Rule 403 regarding unfair prejudice and probative value. In so doing, we find that the statements were inadmissible, unfairly prejudicial, and violated Indiana Evidence Rule 403. Moreover, in the post-9/11 era, gratuitously linking a person of Middle Eastern descent to a terrorist organization—ISIS—is both unfair and uncalled for. As the trial court rightly noted, insinuating a terrorist affiliation "ha[d] the ability to really inflame, potentially inflame, some of the people in our area." Tr. Vol. II p. 20. However, although the trial court recognized the potential for grave harm, it took the matter under advisement and permitted the prosecutor to make multiple statements that suggested a link between Dahab and ISIS.

[15] Dahab has succeeded in establishing that, under the circumstances, the trial court erred in allowing the prosecutor such latitude, and that the error constituted a "clearly blatant violation of basic and elementary principles of due process" and "present[ed] an undeniable and substantial potential for harm." *See Ryan,* 9 N.E.3d at 668.

### *B. Medical Bills*

[16] Next, Dahab argues that the prosecutor committed misconduct when she elicited testimony that he was court-ordered to pay Alsaad's medical bills in advance of trial. Specifically, Dahab argues that the State impermissibly introduced "the civil order mandating [his] payment of [Alsaad's] medical

expenses" in order to demonstrate his guilt and in contravention of Indiana Rule of Evidence 409. Appellant's Br. p. 10. Rule 409 states:

> Evidence of paying, furnishing, promising to pay, or offering to pay:
>
> > (a) medical, hospital, or similar expenses resulting from an injury; or
> >
> > (b) damage to property,
>
> is not admissible to prove liability for the injury or damages.

Evid. R. 409; *see* Ind. Code § 34-44-2-2 ("An advance payment shall not be construed as an admission of liability by any person.").

[17]  As was the case with the ISIS references, the jury here was allowed to hear that Dahab had been court-ordered to pay the victim's hospital bills in advance of trial. There is a dearth of legal precedent on this issue. Like Dahab, we look to *Simon v. Clark,* 660 N.E.2d 634, 637 (Ind. Ct. App. 1996), for guidance. Plaintiff Simon was injured while he was a passenger in defendant Clark's automobile; he sued Clark and others for damages. At trial, Simon tried unsuccessfully to introduce an insurance adjuster's testimony that, in relevant part, he had received medical coverage payments under Clark's insurance policy after the accident. In upholding the trial court's decision to exclude the adjuster's testimony, we found no abuse of discretion, concluding that the trial court "could have correctly determined [pursuant to Rule 409] that the

testimony as a whole implied to the jury that Clark was liable for any damages resulting from" the accident. *Id*. at 637.

[18] Similarly, here, the evidence of Dahab's court ordered payment of Alsaad's medical bills violated Rule 409. It takes no legal scholar to deduce from the transcript that the State introduced this evidence in an attempt to invite the jury to infer guilt. We find that these references were a violation of Indiana Evidence Rule 409.

[19] Reviewing "in the context of all that happened" the prosecutor's remarks about Dahab's court-ordered advance payments and the ISIS references that she elicited and included in her closing remarks, and guided by *Simon*, we find overwhelmingly that violations of Rules 403 and 409 occurred, the cumulative effect of which had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible for Dahab. Accordingly, we must conclude that Dahab has carried his heavy burden of establishing fundamental error that placed him in grave peril to which he would not have been otherwise subjected. *See Ryan,* 9 N.E.3d at 668. Because the doctrine of fundamental error overcomes his procedural default, we must reverse Dahab's conviction.

[20] We are puzzled by the dissent's failure to find the prosecutor's overuse of ISIS references before the jury troubling:

> . . . Dahab would have this court reach the conclusion that the
> deputy prosecutor deliberately introduced the challenged
> evidence for an improper purpose. That is, to inflame the

passions of the jury and to put [Dahab] in a position of grave peril by prejudicing the jury against him. Such a conclusion does not withstand scrutiny of the record in this case.

While it is true that the State did not directly say, "Mr. Dahab is definitively a member of ISIS," we find at least seventeen separate instances in the State's opening statement, case-in-chief, and closing argument in which the prosecuting attorney mentioned ISIS to the jury. While we fully appreciate the zeal that a prosecuting attorney must employ—particularly in the heat of a felony jury trial—the drumbeat of ISIS references and the admission of Dahab's court-ordered advance payments of Alsaad's hospital expenses simply violated fair trial standards. No defendant is guaranteed a perfect trial; however, every defendant is constitutionally guaranteed a fair trial. That did not happen here.

## II. Double Jeopardy

[21]  Lastly, we address whether double jeopardy permits Dahab's retrial. "When deciding whether retrial is permissible, we consider all of the evidence admitted by the trial court, including any erroneously admitted evidence." *Harmon v. State*, 849 N.E.2d 726, 735 (Ind. Ct. App. 2006). "If that evidence, viewed as a whole, would have been sufficient to sustain the judgment, retrial would not offend double jeopardy principles." *Id.* If not, however, the State may not retry Dahab. *See id.*

> When reviewing a claim of insufficient evidence, an appellate court considers only the evidence most favorable to the verdict and any reasonable inferences that may be drawn from that evidence. If a reasonable finder of fact could determine from the

evidence that the defendant was guilty beyond a reasonable doubt, then we will uphold the verdict. We do not reweigh the evidence or judge the credibility of witnesses. These evaluations are for the trier of fact, not appellate courts. In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented.

*Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (quotations omitted) (citations omitted).

[22] Here, a reasonable finder of fact could determine from the State's evidence that Dahab was guilty beyond a reasonable doubt. Alsaad testified that Dahab struck him twice in the head with a metal pipe, resulting in severe head wounds. Chassix line leader Holley-Potter testified that he responded to Alsaad's radio distress call and observed Dahab in a posture of swinging the pipe in preparation to hit Alsaad "again." See Tr. Vol. III p. 24. Dahab, on the other hand, testified that Alsaad's severe head injuries resulted from Alsaad's slipping and falling onto the pipe during the men's struggle. A reasonable finder of fact could determine from the foregoing evidence that Dahab was guilty beyond a reasonable doubt and could reasonably resolve the conflicts in the witnesses' testimony against Dahab. Because the evidence as a whole was sufficient to sustain Dahab's convictions, double jeopardy does not preclude retrial.

## Conclusion

[23] It is clear that the double-barreled evidentiary admissions—the ISIS references and the hospital expenses—combined to deny Dahab a fair trial. Double

jeopardy does not preclude retrial because the evidence as a whole was sufficient to sustain Dahab's convictions. We reverse and remand for a retrial.

[24]  Reversed and remanded for retrial.

May, J., concurs.

Bradford, J., dissents with separate opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Moussa I. Dahab, | |
| *Appellant-Defendant,* | Court of Appeals Case No. 20A03-1706-CR-1369 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff.* | |

**Bradford, Judge, dissenting in part and concurring in part.**

Because I disagree with the majority's conclusion that the deputy prosecutor committed prosecutorial misconduct, I respectfully dissent in part. However, to the extent that the majority's conclusion renders retrial necessary, I concur with the majority's conclusion that double jeopardy concerns do not preclude retrial.

# I. Prosecutorial Misconduct

Prosecutorial misconduct is a serious matter and cannot be taken lightly. At its base, prosecutorial misconduct is a type of attorney misconduct that, if committed, not only effects a defendant's right to due process and fair trial but also erodes the public's confidence in its system of justice. A finding of prosecutorial, like any attorney misconduct, can lead to disciplinary actions

against the offending attorney. With this in mind, a brief overview of the law relating to prosecutorial misconduct is merited.

## 1. Addressing a Claim of Prosecutorial Misconduct

"A claim of prosecutorial misconduct requires a determination that there was misconduct by the prosecutor and that it had a probable persuasive effect on the jury's decision." *Overstreet v. State*, 783 N.E.2d 1140, 1154 (Ind. 2003). "The standard to determine whether prosecutorial misconduct has occurred is whether the conduct under all circumstances *was designed* to arouse the passions of the jury or place the defendant in a position of grave peril." *Mengon v. State*, 505 N.E.2d 788, 792 (Ind. 1987) (emphasis added). In determining whether specific conduct amounted to prosecutorial misconduct, "[w]e defer to the discretion of the trial judge who was on the scene and in the best position to evaluate the conduct, its propriety, its inadvertence and its impact, if any, on the jury and the fairness of the proceedings." *Id*.

## 2. Dahab's Prosecutorial Misconduct Claim

### A. An Evidentiary Harpoon

On appeal, Dahab claims that the State "launched an evidentiary harpoon" by deliberately introducing evidence (A) linking him to the terrorist group ISIS and (B) that he had been ordered to pay Alsaad's medical bills. Appellant's Br. p. 7. "An 'evidentiary harpoon' occurs when the prosecution places inadmissible evidence before the jury *for the deliberate purpose* of prejudicing the jury against the defendant and his defense." *Roberts v. State*, 712 N.E.2d 23, 34 (Ind. Ct.

App. 1999) (emphasis added). Thus, in order to obtain a reversal of one's conviction, the defendant must prove *both* that the evidence was inadmissible and that the prosecutor acted deliberately. *Id.* (emphasis added).

## B. Evidence Linking Dahab to ISIS

[29] Dahab contends that "the State of Indiana deliberately introduced evidence that [he] was a member of the terrorist group, ISIS" and that such evidence was irrelevant and unfairly prejudicial. Appellant's Br. p. 13. These contentions, however, are not supported by the record. It is important to note that the term ISIS was only introduced into the facts of this case through Dahab's own words. Dahab himself referenced ISIS during a struggle that occurred after he approached Alsaad and struck him twice in the back of the head with a pipe. Dahab does not dispute on appeal that he referred to ISIS during his attack on Alsaad. Dahab has pointed to nowhere in the record where any other party or witness independently states that Dahab is a member of ISIS.

[30] Dahab acknowledges on appeal that the deputy prosecutor offered a legitimate purpose for introducing the challenged evidence, that being to prove that Alsaad was afraid of Dahab. Dahab claims, however, that whether Alsaad was afraid of him is irrelevant. Thus, Dahab asserts that "the only reason for asking such a question was to prejudice the jury against [him] by associating him with a radical Islamic terrorist group." Appellant's Br. p. 16. This assertion fails to take into account how Dahab's words were relevant to the issue of motive.

[31]     We have previously concluded that "while motive is not an element of the offense, it is always relevant in the proof of a crime." *Knight v. State*, 556 N.E.2d 968, 969 (Ind. Ct. App. 1990). The record reveals that Alsaad and his family fled Iraq after receiving threats connected to Alsaad's work with the United States government. One may reasonably infer that an individual claiming affiliation to ISIS would want to seek potential retaliation for Alsaad's work. Dahab's reference to ISIS, therefore, becomes relevant as it provides a potential motive for his attack on Alsaad.

[32]     Rather than have this court review the relevancy of his statement to Alsaad, Dahab would have this court reach the conclusion that the deputy prosecutor deliberately introduced the challenged evidence for an improper purpose. That is, to inflame the passions of the jury and to put him in a position of grave peril by prejudicing the jury against him. Such a conclusion does not withstand scrutiny of the record in this case.

[33]     Further, Dahab's assertion that the deputy prosecutor acted with some improper purpose simply by allowing the victim to testify to comments made by Dahab during his attack on the victim to be illogical. The deputy prosecutor acted in accordance with the trial court's pre-trial orders. At no time did the trial court caution the deputy prosecutor to refrain from this topic of ISIS. Rather, the trial court indicated that it could foresee some potential relevance in Dahab's comments. The trial court further indicated that it would consider the introduction of the statements in context during trial. Defense counsel did not object and the trial court allowed Dahab's statements to be admitted into

evidence. These statements involved a sensitive subject matter and may have been ruled inadmissible under Evidence Rule 403 by this or another judge if an objection had been properly made during trial. This we will never know, however, because defense counsel made no such objections. To now transform this record into a finding that the deputy prosecutor participated in a "clear and blatant violation of basic elementary principles of due process[,]" *see Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014), is an inaccurate interpretation of the record of this trial.

[34] In addition, the record does not support the inference that the deputy prosecutor deliberately painted him as a member of ISIS during closing argument. During closing argument, the deputy prosecutor stated the following:

> … [Alsaad] told you that he was challenged to again fight with [Dahab], saying "Come on. Come on. Come on." Said it three times and he holds up his fingers like this to intimidate [Alsaad].[3] He'd been intimidating [Alsaad] the entire eight months since he met [Alsaad] at Chassix. That's what was going on, that's what [Alsaad] testified to.
>
> Was he part of ISIS? Who knows. That was what he said. Who knows if that's what it really was or if that's what he knew would scare [Alsaad]….

---

[3] At this point, the deputy prosecutor was describing another interaction between Dahab and Alsaad which occurred shortly after the incident at issue in the battery charge.

Tr. Vol. III, p. 170. Once again, given that Alsaad was an Iraqi refuge who fled Iraq after having received threats for his and his family's safety, Dahab's comments were relevant to prove his motive for attacking Alsaad.

[35] The record does not support the determination that the deputy prosecutor's actions were deliberately designed to unfairly prejudice Dahab. As such, the record does not support the conclusion that the deputy prosecutor committed prosecutorial misconduct in this regard.[4]

## C. Evidence Relating to Alsaad's Medical Bills

[36] Alsaad testified during trial that Dahab had previously been ordered to pay his medical bills. Alsaad did not give any information regarding the circumstances surrounding the alleged order or indicate what court had issued the order. The statements relating to Alsaad's medical bills were made without objection and without comment by the trial court.

[37] Indiana Evidence Rule 409 provides that "Evidence of paying … (a) medical, hospital, or similar expenses resulting from an injury … is not admissible to prove liability for the injury[.]" Given the language of Indiana Evidence Rule 409, I believe that the evidence in question was inadmissible. However, I do

---

[4] Further, it would be speculation and illogical to assume that the jury was so inflamed by the mere mention of a terrorist organization that it ignored the evidence presented during trial and automatically inferred the defendant's guilt.

not believe that the record supports an inference that the deputy prosecutor acted with the deliberate intent to unfairly prejudice Dahab.

[38] It is important to note that a potential inaccurate grasp of the rules of evidence, perhaps by all trial counsel in this case, does not amount to prosecutorial misconduct. Again, the challenged statements were admitted without objection and without comment by the trial court. There is nothing in the record to suggest that the evidence was introduced with the deliberate intent to unfairly prejudice Dahab. Thus, in order to find that the deputy prosecutor did act with the deliberate intent to prejudice Dahab would require us to rely purely on speculation. We shall not rely on speculation, but rather must rely on the record before us on appeal. *See Shafer v. Lambie*, 667 N.E.2d 226, 232 (Ind. Ct. App. 1996) (providing that "[w]e must decide the case on the record before us, and we will not speculate as to the actual facts of a case").

[39] Again, prosecutorial misconduct is conduct that is deliberately "designed to arouse the passions of the jury[.]" *Mengon*, 505 N.E.2d at 792. It is unclear from the record whether this evidence of liability for medical payment had any effect on the jury, much less that it aroused their passions. To find that it did so would again require us to rely purely on speculation, which we shall not do. *See Shafer*, 667 N.E.2d 232. Thus, the record provided in this case does not support a finding that the deputy prosecutor committed prosecutorial misconduct in this regard.

## D. The Effect of the Challenged Evidence as a Whole

[40]    The record indicates that the challenged evidence was so inconsequential during the course of trial that defense counsel did not even object to the admission of the evidence. Considering that defense counsel apparently did not believe that the challenged evidence even warranted an objection, it seems illogical to conclude that the evidence was so bad that it warranted a finding that the deputy prosecutor acted with the deliberate intent to unfairly prejudice Dahab by introducing this evidence.

[41]    Furthermore, the admission of the challenged evidence was harmless in light of the other unrelated evidence of Dahab's guilt. *See Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017) (providing that "[t]he improper admission of evidence is harmless error when the erroneously admitted evidence is merely cumulative of other evidence before the trier of fact."). Alsaad testified in detail at trial about Dahab's actions. Alsaad's testimony was corroborated by the testimony of Andrew Holley-Potter, another Chassiz employee who observed Dahab and Alsaad struggling over the pipe while Dahab attempted to hit Alsaad with the pipe. In addition, Dahab's supervisor testified that immediately after the incident, Dahab admitted that he had struck Alsaad with the pipe. Given this evidence, it unlikely that the jury would not have found Dahab guilty but for the challenged evidence.

# Conclusion

[42] In sum, the record does not support the majority's conclusion that the deputy prosecutor acted with the requisite intent to support a finding of prosecutorial misconduct. I therefore dissent from the majority's conclusion to that effect.