

**FILED**

Jan 28 2015, 10:08 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John S. Antalis
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brent Anthony Dimmitt,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 28, 2015

Court of Appeals Cause No.
79A02-1406-CR-443

Appeal from the Tippecanoe Superior
Court
The Honorable Randy J. Williams,
Judge
Cause No. 79D01-1301-FB-1

**Bradford, Judge.**

# Case Summary

[1] On December 28, 2012, a fight broke out between several people outside of a Lafayette bar. During the altercation, Appellant-Defendant Brent Dimmitt attacked and injured two men, one of whom was seriously injured. Dimmitt admitted to being the president of a criminal gang called Rebel Cause. Dimmitt instigated and took part in the fight with several other members of Rebel Cause. Dimmitt was convicted of Class C felony battery, Class A misdemeanor battery, Class D felony criminal gang activity, and being a habitual offender. Dimmitt was sentenced to consecutive terms of eight years for Class C felony battery, one year for Class A misdemeanor battery, two years for criminal gang activity, and eight years for being a habitual offender, for a total of eighteen years served and one year suspended to probation.

[2] Dimmitt claims that (1) the trial court fundamentally erred by failing to properly instruct the jury on the elements of the charge of criminal gang activity, (2) the trial court's sentence exceeded the maximum sentence allowed by statute, and (3) the evidence was insufficient to support the conviction for criminal gang activity. We find that Dimmitt's sentence was erroneous in two respects: (1) the trial court erred by imposing the habitual offender sentence as a separate count rather than as an enhancement of the underlying felony and (2) the sentence exceeded the statutory limitation for consecutive terms. We reverse and remand with instructions that Dimmitt's sentence be reduced by one year. In all other respects, we affirm.

# Facts and Procedural History

[3] In the early morning hours of December 28, 2012, Troy Kelly, Raymond Depew, and David Widner arrived at a Lafayette bar with several friends. After being seated, a man in a blue hooded sweatshirt approached the group and confronted Depew about eye contact that had been made upon entering the bar. The man left the table but soon returned accompanied by two other men, Dimmitt and Robert Niles. During the verbal confrontation that ensued between the two groups, Dimmitt lifted his shirt, exposing several gang-related tattoos, and stated that he was the president of a gang called Rebel Cause. Dimmitt's tattoos include a swastika on his chest and an emblem on his bicep which bears the words "rebel cause" and "pres." Ex. 32, 36. Tr. pp. 399-400. There were other individuals in the bar with Rebel Cause tattoos. Niles was also a member of Rebel Cause. After members of Depew's group made assurances that they did not want any trouble, Dimmitt shook hands with two people in the group and left.

[4] At approximately 2:30 a.m., Depew's group attempted to leave the bar. Dimmitt's group followed them outside, at which point the man in the blue hooded shirt came up behind Depew and punched him in the back of the head. A fight ensued between several people from each group. Dimmitt and the man in the blue shirt grabbed Kelly while another man punched Kelly in the face. Dimmitt then held Kelly against a car and punched him in the face. Kelly suffered cuts and abrasions throughout his body and a torn rotator cuff.

Minutes later, Dimmitt punched Widner, knocking him unconscious. Dimmitt then kicked Widner in the head as he laid on the ground unconscious.

[5]     As a result of the attack, Widner suffered a skull fracture and a subdural hematoma. Widner has suffered permanent brain damage as a result of the injury. He has since suffered from depression and anxiety and has had problems with walking, spatial awareness, fine motor skills on his left side, and social and communication skills.

[6]     Appellee-Plaintiff the State of Indiana (the "State") charged Dimmitt with Class B felony aggravated battery, Class C felony battery, Class A misdemeanor battery, Class B misdemeanor battery, Class D felony criminal gang activity, and being a habitual offender. During the trial, the State introduced evidence from several gang specialists that Rebel Cause was a white supremacist prison gang that had expanded outside prisons. The gang has approximately 163 members and has been known to engage in criminal activity including murder, kidnapping, armed robbery, arson, dealing cocaine, intimidation, battery, and assault. To be admitted to the gang, members must commit some type of physical assault against another person. When members leave the gang, they are physically assaulted by other members as punishment.

[7]     With regard to the criminal gang activity charge, the trial court instructed the jury as follows:

> The crime of criminal Gang Activity is defined as follows:
> A person who knowingly or intentionally actively participates in a
> criminal gang commits Criminal Gang Activity, a class D felony.

Before you may convict the Defendant, the State must have proved each of the following elements beyond a reasonable doubt:

    1. The Defendant
    2. Knowingly or intentionally
    3. Actively participated in
    4. A criminal gang

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Criminal Gang Activity, a class D felony, as charged in Count V.

If the State did prove each of these elements beyond a reasonable doubt, you may find the Defendant guilty of Criminal Gang Activity, a class D felony, as charged in Count V.

                    \* \* \* \*

The term "criminal gang" means a group with at least three (3) members that specifically

    promotes, sponsors, assists in, or participates in

    or

    requires as a condition of membership or continued membership

the commission of a felony, or an act that would be a felony if committed by an adult, or the offense of battery.

Appellant's App. pp. 401, 408.

[8] The jury found Dimmitt guilty of Class C felony battery causing serious bodily injury, Class A misdemeanor battery, and Class D felony criminal gang activity. Dimmitt pled guilty to the habitual offender charge. The trial court sentenced Dimmitt to consecutive sentences of eight years for felony battery, one year for misdemeanor battery, two years for criminal gang activity, and eight years for being a habitual offender, for a total of eighteen years served and one year suspended to probation.

# Discussion and Decision

Dimmitt makes the following arguments on appeal: (1) the trial court fundamentally erred by failing to properly instruct the jury on the elements of the charge of criminal gang activity, (2) the trial court's sentence exceeded the maximum sentence allowed by statute, and (3) the evidence was insufficient to support the conviction for criminal gang activity.

# I. Fundamental Error in the Jury Instructions

Instructing a jury is left to the sound discretion of the trial court and this court will review such decisions only for an abuse of discretion. *Washington v. State*, 997 N.E.2d 342, 345 (Ind. 2013). However, a party wishing to preserve such an error for appeal must identify the specific grounds for objection at trial. *Kane v. State*, 976 N.E.2d 1228, 1231 (Ind. 2012). As an initial matter, Dimmitt concedes that he failed to object to the instruction at trial. However, Dimmitt attempts to avoid the effect of his waiver by contending that the trial court committed a fundamental error in failing to properly instruct the jury.

At the time Dimmitt committed his offenses, Indiana Code section 35-45-9-3 (the "Gang Statute") stated, "[a] person who knowingly or intentionally actively participates in a criminal gang commits criminal gang activity, a class D felony." In *Helton v. State*, 624 N.E.2d 499, 508 (Ind. Ct. App. 1993), this court construed the statute to require that "the active member with guilty knowledge also have a specific intent or purpose to further the group's criminal conduct before he may be prosecuted." "The specific-intent element requires proof of a nexus between furthering the goals of the criminal gang and the

alleged crime." *G.H. v. State*, 987 N.E.2d 1164, 1168 (Ind. Ct. App. 2013) *trans. denied.* Dimmitt claims that the trial court fundamentally erred by omitting the element of specific intent from its instruction.

> Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002), *quoted in* [*Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012)] and [*Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)]. In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." *Id.* The element of such harm is not established by the fact of ultimate conviction but rather "depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled." *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994) (quoting *Hart v. State*, 578 N.E.2d 336, 338 (Ind. 1991)).

*Ryan v. State*, 9 N.E.3d 663 (Ind. 2014), *reh'g denied*. Put differently, a fundamental error "must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Spears v. State*, 811 N.E.2d 485, 489 (Ind. Ct. App. 2004)

[12] The trial court's failure to *sua sponte* instruct the jury on the specific-intent element was not a fundamental error because there was no substantial harm to Dimmitt. The State provided substantial evidence which indicated a nexus between Dimmitt's offenses and furthering the goals of his criminal gang.

Specifically, the State showed that the members of Rebel Cause typically engage in violent behavior, including battery, as part of ritual initiations and punishments, and more generally to promote fear and maintain an image of viciousness. From the beginning of the altercation between Dimmitt and the victims' group, Dimmitt was clear about his affiliation and leadership within the gang. He used this affiliation, and the tattoos designating such, as a means to intimidate the victims. Furthermore, Dimmitt took part in the batteries with several individuals who were also identified as members of Rebel Cause. Therefore, because the State provided evidence to support the finding of a nexus, there was no undeniable or substantial potential for harm as is necessary to find a fundamental error.

## II. Sufficiency of Evidence

[13]    Dimmitt argues that there was insufficient evidence to support his conviction for criminal gang activity because there was not substantial evidence of a nexus between Dimmitt's gang affiliation and the charged offenses.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder *could* find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of

innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (internal quotations and citations omitted, emphasis in original).

[14] To support his argument, Dimmitt cites to cases in which this court, and the Indiana Supreme Court, have reversed convictions for criminal gang activity where there was not a sufficient nexus between the offense and the gang affiliation. *Trice v. State*, 693 N.E.2d 649 (Ind. App. Ct. 1998); *Ferrell v. State*, 746 N.E.2d 48 (Ind. 2001). In *Ferrell*, the Court found that "[t]he State's case on [the criminal gang activity] offense consisted only of evidence that Ferrell, at some point, was a member of a gang that commits criminal offenses." *Id.* at 51. Specifically, the State only presented evidence that Ferrell had gang tattoos. There was no other evidence which tied his commission of robbery and murder to his gang affiliation.

[15] In *Trice*, the defendant belonged to a gang called D'Ware, which was known to engage in narcotics trafficking. 693 N.E.2d at 650. Although Trice admitted to being an active gang member, there was no evidence which showed how Trice's battery of the victim was related to any gang activities. Rather, the evidence showed that Trice beat the victim "spontaneously" after the victim caused Trice's bottle of liquor to spill and refused to pay for it. *Id*. at 651.

[16] The instant case is distinguishable from *Ferrell* and *Trice*. As we have already outlined in detail, there is substantial evidence indicating a nexus between the

battery and the gang activity: Dimmitt openly announced his affiliation with Rebel Cause at the outset of the confrontation and used that affiliation as a means of intimidation; battery is commonly used by the gang for various reasons to further its criminal goals; and Dimmitt committed the underlying offenses together with other members of Rebel Cause. As such, the evidence was not insufficient to support the conviction for criminal gang activity.

# III. Sentence in Excess of Statutory Limits

## A. Habitual Offender Enhancement

[17]    The version of Indiana Code section 35-50-2-1.3 which was in effect at the time the instant offenses were committed provided as follows:

> (a) For purposes of sections 3 through 7 of this chapter, "advisory sentence" means a guideline sentence that the court may voluntarily consider as the midpoint between the maximum sentence and the minimum sentence.
> (b) Except as provided in subsection (c), a court is not required to use an advisory sentence.
> (c) In imposing:
>> (1) consecutive sentences for felony convictions that are not crimes of violence (as defined in [Indiana Code section] 35-50-1-2(a)) arising out of an episode of criminal conduct, in accordance with [Indiana Code section] 35-50-1-2;
>> (2) an additional fixed term to an habitual offender under section 8 of this chapter; or
>> (3) an additional fixed term to a repeat sexual offender under section 14 of this chapter;
> a court is required to use the appropriate advisory sentence in imposing a consecutive sentence or an additional fixed term. However, the court is not required to use the advisory sentence in imposing the sentence for the underlying offense.

[18] The trial court sentenced Dimmitt to the maximum eight-year sentence on Count II, Class C felony battery resulting in serious bodily harm, and an additional eight years on Count VI, habitual offender. Dimmitt argues that the eight-year sentence for being a habitual offender violates the statute because it is an additional fixed term greater than the four-year advisory sentence for a Class C felony. Dimmitt mischaracterizes the statute. Section 35-50-2-1.3 states that it does not apply to the sentence for the underlying offense. The habitual offender statute does not carry the same advisory sentence as the statute governing Class C felonies. Indiana Code section 35-50-2-8(h), as was in effect at the time Dimmitt committed the instant offenses, provided that "[t]he court shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense." As such, the eight-year enhancement for being a habitual offender did not violate the statute as the trial court could have sentenced Dimmitt up to twelve years (three times the four-year advisory sentence for the underlying Class C felony).

[19] However, we note that the trial court erred in applying the habitual offender sentence as a separate count. The State concedes this point and notes that a habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence. Rather, it is a sentence enhancement imposed upon the underlying felony conviction. *Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001). As such, remand is necessary to remedy this error.

# B. Convictions Arising Out of One Episode of Criminal Conduct

[20] Dimmitt claims that his aggregate sentence of eleven years for Class C felony battery, Class D felony criminal gang activity, and Class A misdemeanor battery, violated Indiana Code section 35-50-1-2(c) and should be reduced to a term not greater than ten years.

> Except as provided in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively …. [T]he total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under [Indiana Code section] 35-50-2-8 and [Indiana Code section] 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

[21] Dimmitt was sentenced to eight years on the Class C felony, two years on the Class D felony, and one year on the misdemeanor. At Dimmitt's sentencing, the State opined that Section 35-50-1-2(c) would only apply to the two felony convictions and that, under that statute, Dimmitt could be sentenced to a maximum aggregate term of ten years for the two felony convictions (the advisory sentence for a Class B felony) and one additional year for the misdemeanor. Dimmitt claims that his misdemeanor conviction should have been included in the consecutive sentencing limitation of Section 35-50-1-2. The State concedes on appeal that its prior assertion at trial was incorrect and that the statute has been interpreted to include misdemeanors in addition to felonies (see *Purdy v. State*, 727 N.E.2d 1091 (Ind. Ct. App. 2000)). However,

the State argues that the Section 35-50-1-2 does not apply to Dimmitt's misdemeanor conviction because the offenses did not arise out of a single episode of criminal conduct. We do not agree with the State's position in this regard.

[22] At the sentencing hearing, the State conceded that the offenses occurred as part of a single episode of criminal conduct. Despite this apparent waiver, the State now claims that the two separate batteries were not part of a single episode of conduct because they were committed against two separate victims. The phrase "episode of criminal conduct" means "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b). The two batteries took place approximately a few minutes apart, occurred as part of the same conflict, in the same place, and between the same groups of people. The only material distinction between the two crimes was the identity of the victim. This distinction alone is not enough to determine that the offenses were not part of the same episode of criminal conduct.

[23] In *Harris v. State*, 861 N.E.2d 1182 (Ind. 2007), Harris was convicted of two counts of sexual misconduct with a minor. The two offenses occurred approximately five minutes apart in the same apartment against two different victims. The Indiana Supreme Court determined that the two offenses were a single episode of criminal conduct and reduced Harris's sentence accordingly. *Id*. at 1189. In reaching this conclusion, the Court noted two other cases from the Indiana Court of Appeals which similarly involved multiple victims and longer time spans between offenses, yet each was determined to be a single

"episode." *Id.* (citing *Trei v. State*, 658 N.E.2d 131 (Ind. Ct. App. 1995) and *Ballard v. State*, 715 N.E.2d 1276 (Ind. Ct. App. 1999)). We see no reason to distinguish Dimmitt's offenses. Accordingly, we remand with instructions to reduce Dimmitt's eleven-year sentence for felony battery, felony criminal gang activity, and misdemeanor battery, to ten years.

# Conclusion

[24] We reverse the trial court's sentence and remand with instructions that (1) the eight-year habitual offender sentence be imposed as an enhancement rather than a separate consecutive sentence and (2) the aggregate sentence for felony battery, misdemeanor battery, and criminal gang activity, be reduced from eleven to ten years, which is the maximum permitted by statute at the time the crimes were committed in the course of a single episode of criminal misconduct.

[25] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

Najam, J., and Mathias, J., concur.