## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 17 2018, 9:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Michael C. Keating | Curtis T. Hill, Jr. |
| Keating & LaPlante, LLP | Attorney General of Indiana |
| Evansville, Indiana | |
| | James B. Martin |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James M. Hardiman, Jr., | October 17, 2018 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 18A-CR-317 |
| v. | Appeal from the Vanderburgh Superior Court |
| State of Indiana, | The Honorable Amy Miskimen, Special Judge |
| *Appellee-Defendant* | Trial Court Cause No. 82D03-1708-F1-4817 |

**Baker, Judge.**

[1] James Hardiman, Jr., appeals his convictions for Level 1 Felony Child Molesting,[1] two counts of Class A Misdemeanor Contributing to the Delinquency of a Minor,[2] and Level 5 Felony Neglect of a Dependent.[3] Hardiman makes the following arguments: (1) the trial court erroneously admitted testimony regarding Hardiman's intoxicated state; (2) there is insufficient evidence supporting the neglect of a dependent conviction; (3) fundamental error resulted from prosecutorial misconduct; (4) the neglect of a dependent conviction and one of the contributing to the delinquency of a minor convictions violate the prohibition against double jeopardy; and (5) the trial court erroneously notated an habitual offender adjudication as a separate conviction and sentence rather than as an enhancement to the Level 1 felony conviction.

[2] The State concedes the double jeopardy violation, and we agree. We also find that the sentencing order, chronological case summary, and abstract of judgment need to be corrected to properly notate the habitual offender enhancement. We find no other error. Therefore, we affirm in part, reverse in part, and remand with instructions to vacate one of the Class A misdemeanor contributing to the delinquency of a minor convictions and to correct the sentencing order, chronological case summary, and abstract of judgment to

---

[1] Ind. Code § 35-42-4-3(a).

[2] Ind. Code § 35-46-1-8(a).

[3] I.C. § 35-46-1-4(b).

reflect that the habitual offender adjudication operates as an enhancement to the Level 1 felony conviction rather than an independent sentence.

# Facts

[3]     On August 19, 2016, then-thirteen-year-old C.M. went to the apartment of her friend, K.H. K.H. lived with Hardiman, who is her father, and K.H.'s two older brothers. At some point, K.H. and C.M. texted Hardiman to ask him to pick up some food; instead, he took them to get alcohol. They returned to the apartment, where C.M. drank three or four "strawberritas" over the course of forty-five minutes to an hour. Tr. Vol. II p. 74. C.M. fell asleep in the living room.

[4]     Later that evening, C.M. woke up and stood up from the couch. She felt sick and vomited as she was walking to the bathroom. K.H. and K.R., the girlfriend of one of K.H.'s brothers, helped C.M. shower, got her a clean shirt, and helped her into K.H.'s bed. Around 1:00 a.m., K.H. woke up C.M. to ask her if she wanted to leave with K.H., her brothers, and K.R. to get some food. C.M. said she wanted to go back to sleep and did not want to go with them. C.M. went back to sleep and K.H., her brothers, and K.R. left the apartment.

[5]     At some point during the evening, Hardiman and his friend, Curtis White, arrived at the apartment. Hardiman and White both drank alcohol throughout the evening.

[6]     After everyone but Hardiman, White, and C.M. had left the apartment, Hardiman entered the room where C.M. was sleeping and sat on the end of the

bed. C.M. recognized his voice as he asked her whether she had ever had sex before. *Id.* at 95. C.M. said she had not and told him to leave her alone. Hardiman began touching her legs and pants and she tried to roll away from him, saying "Stop, leave me alone, I'm trying to sleep." *Id.* at 97. He responded, "You're never gonna wanna come back here again." *Id.* at 98. Hardiman pulled C.M.'s pants down to her ankles. He left the room for two or three minutes, then returned and got onto the bed. C.M. tried to tense up so she couldn't be moved, but she was unsuccessful. He moved her legs and inserted his penis into her vagina. Hardiman's penis was inside her vagina for approximately ten seconds and C.M. said that it "hurt real bad," *id.* at 106, later saying that the pain was a six or seven on a scale of one to ten. He "got off really fast and went back and laid down." *Id.* At some point, C.M. saw his face and again recognized him as Hardiman.

[7] Following the incident, C.M. was scared and did not know what to do. She did not tell anyone until August 23, 2016, when she told a friend at school. Eventually, C.M.'s parents learned about it. They took her to the hospital and called the police. A sexual assault examination revealed a fresh laceration on C.M.'s vagina and bright red coloring to her cervix, which is normally a much lighter pinkish color. The injuries observed were consistent with recent intercourse.

[8] On August 30, 2016, the State charged Hardiman with Level 1 felony child molesting, Level 3 felony rape, and two counts of Class A misdemeanor contributing to the delinquency of a minor. The State later added an habitual

offender allegation and charges of Level 3 and Level 5 felony neglect of a dependent.

[9] Hardiman's first jury trial resulted in a mistrial. A second trial began on December 11, 2017. The jury found Hardiman not guilty of Level 3 felony neglect of a dependent and guilty of the remaining charges. Hardiman admitted to being an habitual offender. At the January 11, 2018, sentencing hearing, the trial court vacated the rape conviction based on double jeopardy concerns. The trial court sentenced Hardiman to concurrent terms of thirty-five years for child molesting, one year on each of the Class A misdemeanor convictions, and six years for Level 5 felony neglect of a dependent. The trial court added an habitual offender enhancement of twenty years, resulting in an aggregate sentence of fifty-five years imprisonment. Hardiman now appeals.

# Discussion and Decision

## I. Evidence

[10] Hardiman first raises two evidentiary issues: (1) the trial court erroneously permitted K.H. to testify regarding her belief that Hardiman was intoxicated on the night in question; and (2) the evidence does not support his conviction for Level 5 felony neglect of a dependent.

## A. Admission of Evidence

[11] With respect to Hardiman's argument that the trial court erroneously admitted evidence regarding his intoxicated state on the night in question, we note that

the admission or exclusion of evidence is within the trial court's discretion, and we will reverse only if the trial court's decision clearly contravenes the logic and effect of the facts and circumstances before it or if the trial court has misinterpreted the law. *E.g.*, *Bradford v. State*, 960 N.E.2d 871, 873 (Ind. Ct. App. 2012).

[12] Hardiman argues, essentially, that the State did not lay a sufficient foundation to permit K.H. to testify regarding her opinion that he was intoxicated. Indiana Evidence Rule 701 provides that if a witness is not testifying as an expert, testimony in the form of an opinion must be rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue.

[13] K.H. testified that she had been around her father in the past when he had been drinking and that on the night in question, he appeared to be intoxicated. Tr. Vol. III p. 133-34. She based that conclusion on her observations that he was slurring his speech and smelled of alcohol. *Id.* at 134-35. We find that this is a sufficient foundation to support K.H.'s opinion testimony that Hardiman was intoxicated and that the trial court did not err by admitting it. It was for the jury to evaluate and weigh K.H.'s opinions in light of her youthful age and inexperience—those factors do not render the evidence inadmissible.

[14] We also note that Hardiman's friend testified that Hardiman had told him that he was so drunk that night that he passed out on the couch. *Id.* at 160, 162. Additionally, an audio interview of K.R. was played for the jury in which she

stated that Hardiman and White were "pretty drunk," that Hardiman smelled of alcohol, and that "you could just tell by his behavior" that Hardiman was "really drunk." *Id.* at 219-22. Another witness testified that Hardiman "was drunk" that night. Tr. Vol. IV p. 18. Under these circumstances, even if the admission of K.H.'s testimony was erroneous, it was harmless error because the substance of her testimony was cumulative of other evidence in the record. *Pavey v. State*, 764 N.E.2d 692, 703 (Ind. Ct. App. 2002). Consequently, this argument is unavailing.

## B. Sufficiency

Hardiman next argues that the evidence is insufficient to support his conviction for Level 5 felony neglect of a dependent. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction and will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

To convict Hardiman of Level 5 felony neglect of a dependent, the State was required to prove beyond a reasonable doubt that he had the care of a dependent, he knowingly or intentionally placed the dependent in a situation that endangered her life or health, and his actions resulted in bodily injury to the dependent. I.C. § 35-46-1-4(b)(1)(A). The only argument Hardiman makes on appeal is that the State did not prove that his actions resulted in bodily injury

to C.M. More specifically, Hardiman argues that the State did not prove that his act of providing alcohol to C.M., thereby allowing her to become intoxicated, resulted in the sexual assault, because there is no evidence that she was so intoxicated that she could not have fought him off.

[17] Initially, we note that the jury was instructed that "bodily injury" means impairment of a physical condition, including physical pain. And our Supreme Court has observed that "bodily injury" includes "'pain, illness, or physical impairment caused indirectly'" by a defendant's actions. *Bailey v. State*, 979 N.E.2d 133, 139 (Ind. 2012) (quoting Model Penal Code § 211.1 cmt. 3). Therefore, the jury could have found that the bodily injury suffered by C.M. was the sickness and vomiting she experienced as a result of the alcohol given to her by Hardiman. It cannot be reasonably questioned that there is a direct causal nexus between his actions and this result. Therefore, we find the evidence sufficient to support the conviction.

[18] Hardiman focuses on C.M.'s pain and vaginal laceration as the bodily injury on which the conviction is based. He argues that there is no evidence suggesting that she was still intoxicated at the time of the assault, meaning that the injuries did not result from his provision of alcohol to her. We disagree. There is evidence in the record that earlier in the evening, C.M. was so intoxicated that she vomited on herself and needed assistance to shower afterwards. A reasonable juror could conclude that she was still intoxicated at the time of the attack and that her intoxication affected her ability to ward off Hardiman's assault. *See* Tr. Vol. II p. 104 (C.M.'s testimony that although she tried to

resist, Hardiman "moved like my legs and I couldn't do anything about it"). Moreover, her intoxication certainly isolated her from the other young people in the apartment, causing her to remove herself to a bedroom and decline to leave with them, which left her alone in the apartment with Hardiman and created the opportunity for the assault. Therefore, regardless of which bodily injury the jury determined she sustained—the sickness and vomiting or the pain and vaginal laceration—we find the evidence sufficient to support this conviction.

## II. Prosecutorial Misconduct

Hardiman next argues that the prosecutor committed prosecutorial misconduct at multiple points during closing argument. In reviewing a claim of prosecutorial misconduct, we must consider first whether misconduct occurred and second whether the misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Williams v. State*, 724 N.E.2d 1070, 1080 (Ind. 2000). Here, Hardiman's counsel did not object to the statements at issue. Therefore, he must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Ryan v. State*, 9 N.E.3d 663, 667-68 (Ind. 2014). The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant denial of basic due process principles that makes it impossible to receive a fair trial. *Id.*

Hardiman argues that the prosecutor improperly vouched for the credibility of certain witnesses, stated his personal opinion regarding Hardiman's guilt, and

urged the jury to base its verdict on whether they trusted the prosecutor or defense counsel more. It is well established that a prosecutor "may not state his or her personal opinion regarding the credibility of a witness during trial, as such statements amount to vouching for a witness." *Brummett v. State*, 10 N.E.3d 78, 86 (Ind. Ct. App. 2015), *aff'd*, 24 N.E.3d 965 (Ind. 2015). A prosecutor may, however, "'comment as to witness credibility if the assertions are based on reasons arising from the evidence presented at trial.'" *Id.* (quoting *Thomas v. State*, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012)).

[21] First, Hardiman directs our attention to the prosecutor's comments about the testimony of James Price. Price is one of Hardiman's friends who testified reluctantly against Hardiman. The prosecutor made the following observations to the jury:

> James Price is what I call a head on your pillow type witness. James Price is one that makes me feel pretty good when I put my head on my pillow, that I know that James Hardiman's guilty. I know that he raped [C.M.] and I know that he's guilty of child molesting. I know that he's guilty of child neglect. I know he's guilty of contributing to the delinquency of a minor. And why is that? First off, folks, in my experience - it's just my personal preference - I find a lot of times the best evidence I get is from people who don't wanna have to tell me things, 'cause of either a relationship with a party on the other side - and it doesn't mean there's - Mr. Price testified admirably. There's nothing wrong with what he testified to, but he's close friends with Mr. Hardiman. And when I talked to Mr. Price it's clear he wouldn't give us this information unless he was bound to tell us the truth, and he had to. He didn't wanna help us in this case. But he was under oath.

Tr. Vol. IV p. 68-69. It would certainly have been preferable for the prosecutor to have refrained from making comments about his own opinions as to Hardiman's guilt and Price's believability. But in reviewing the whole passage, it is apparent that the prosecutor was telling the jury, based on the evidence, that Price was Hardiman's close friend and that a close friend would not provide damaging testimony unless that testimony were true. Ultimately, we find that these comments were a proper comment on the evidence before the jury and that they did not amount to misconduct.

[22] Next, Hardiman directs our attention to the following comments related to Hardiman's defense that it was Curtis White, rather than Hardiman, who assaulted C.M.:

> [E]ven if you find that Curt White did this, you go down to those neglect of a dependent charges and take a look at those charges. That proximate cause for Curt White, if he did—and I don't believe he did—proximate cause of him being able to do this to this young lady is this man and the fact that - I told you it was about trust - Beth and J.D. trusted this man to take care of their 13 year old daughter and he goes out, he gets drunk, he gets alcohol for them, he gets them drunk. She is in the bed. He brings over an accused rapist[4] who helps get drunk with him. See where I'm goin'? Screams neglect of a dependent. . . . Beth and J.D. trusted James Hardiman with their 13 year old daughter and he just blew through that trust in the worst way imaginable. Now I'm tellin' you this, it didn't matter, because that man raped that

---

[4] At the time of the assault, White was facing a rape charge in an unrelated case.

young lady. And she stood right there in front of you and said, "I am positive it was James Hardiman.["]

*Id.* at 71. Again, the prosecutor should have avoided commenting as to his own opinions. But we find that these comments did not vouch for the credibility of any particular witness. Instead, the prosecutor was informing the jury that (1) whether White or Hardiman committed the assault is irrelevant to the neglect charge; and (2) the argument that White committed the assault is not supported by the evidence, including C.M.'s testimony that it was Hardiman who assaulted her. We find that these comments are rooted in the evidence and arguments before the jury and that they do not amount to prosecutorial misconduct.

[23] Finally, Hardiman directs our attention to the following statements made by the prosecutor on rebuttal:

> The reason people don't come forward and don't share all of this is because we skewer them. We Monday morning quarterback. And we nitpick all the details. And you darn well better bet you're not gonna get every single thing right. You can take almost anyone on somethin' that happened a year and a half ago, and especially if it's embarrassing, and if you make 'em talk about it enough you're gonna find things to start pickin' at. And once you pick open one little wound, then all of a sudden somethin' else is gonna be different. That's what lawyers do. But, you know, you don't have to do it. What you have to do is what's right. I said this case is about trust. If you were on a ledge and we're handin' you this case and I'm givin' you my hand, do you trust that I would get you in off that ledge? Or do you trust [defense counsel] and the Defense? That's what it's about, it's about trust.

*Id.* at 92-93. Hardiman argues that these comments improperly suggest to the jury that it should base its decision on whether it trusted counsel for the State or counsel for the defense more. We disagree. It is apparent that the prosecutor was appropriately asking the jury to credit the State's theory of the case over Hardiman's, which the prosecutor contended required the jury to ignore the evidence in favor of speculation, and explaining why C.M. may have been reluctant to come forward and uncertain about all of the details of the assault. These comments do not amount to prosecutorial misconduct. In sum, we do not find that any of these comments amount to error, let alone fundamental error, and we decline to reverse on this basis.

## III. Double Jeopardy

[24]    Next, Hardiman argues that his convictions for Level 5 felony neglect of a dependent and one of the Class A misdemeanor contributing to the delinquency of a minor charges cannot both stand because they violate the prohibition against double jeopardy. The State concedes this issue, and we agree.

[25]    The evidence supporting both of these charges was the same—that Hardiman provided alcoholic beverages to C.M., a minor in his temporary care and custody.[5] Consequently, the dual convictions violate the actual evidence test set forth by our Supreme Court. *See Richardson v. State*, 717 N.E.2d 32, 55 (Ind.

---

[5] The other Class A misdemeanor contributing to the delinquency of a minor conviction was based on Hardiman's provision of alcohol to K.H.

1999) (Sullivan, J., concurring) (observing that a defendant may not be convicted and punished for a crime that consists of the very same act as another crime for which he has been convicted and punished). Therefore, we reverse and remand with instructions to vacate Count IV, which is one of Hardiman's convictions for Class A misdemeanor contributing to the delinquency of a minor. *See Moala v. State*, 969 N.E.2d 1061, 1065 (Ind. Ct. App. 2012) (providing that a violation of double jeopardy principles requires that we vacate the conviction with the least severe penal consequences).

## IV. Habitual Offender Enhancement

[26] Finally, Hardiman argues that the trial court issued an improper sentencing order that listed the habitual offender enhancement as a separate and independent sentence rather than an enhancement to his Level 1 felony conviction. The hearing journal entry and sentencing order state that the trial court "hereby sentences the Defendant on the Habitual Count [to] 20 years executed at the IDOC consecutive to the other Counts." Appellant's App. Vol. IV p. 28, 112.

[27] Hardiman is correct that an habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence; instead, it is a sentence enhancement imposed on an underlying felony conviction. *Dimmitt v. State*, 25 N.E.3d 203, 209 (Ind. Ct. App. 2015). Therefore, we remand with instructions to correct the sentencing order, chronological case summary, and abstract of judgment (if necessary) to reflect that the habitual offender adjudication is an

enhancement of the sentence for Hardiman's Level 1 felony conviction rather than an independent conviction and sentence.

[28] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to (1) vacate Count IV, which is one of Hardiman's Class A misdemeanor convictions; and (2) correct the sentencing order, chronological case summary, and abstract of judgment to reflect that the habitual offender adjudication is an enhancement of the sentence for Hardiman's Level 1 felony conviction rather than an independent conviction and sentence.

May, J., and Robb, J., concur.